[No. C044770. Third Dist. Oct. 31, 2006.*]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN MICHAEL TACKETT, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION†]**

*Review granted February 21, 2007. On September 12, 2007, review dismissed and cause remanded to Court of Appeal, Third Appellate District. Opinion directed to be published by the Supreme Court on October 24, 2007.

†Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts III through IX.

## Counsel

Paul V. Carroll, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, John G. McLean, Stephen G. Herndon, Barbara J. Moore and R. Todd Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**SCOTLAND, P. J.**—In yet another example of the tragic consequences of driving under the influence of alcohol, an innocent husband and wife were killed and their son was greatly injured when their car was struck by a speeding truck operated by an intoxicated driver. The criminal trial that followed centered on whether the truck was being driven by defendant Steven Michael Tackett or his friend, Michael Cotham.

A jury found defendant guilty of felony driving under the influence of alcohol (DUI), felony driving with a blood-alcohol level of .08 percent or higher, and two counts of gross vehicular manslaughter while intoxicated. The jury also found that he drove with a blood-alcohol level of .20 percent or higher, personally inflicted great bodily injury upon one person, and caused death or bodily injury to four persons. He was sentenced to an aggregate unstayed prison term of 16 years eight months, which included an upper term, consecutive terms, and enhancements.

On appeal, defendant raises various contentions, including that the trial court erred in excluding evidence of two occasions in which Cotham recklessly drove a car while he was under the influence of alcohol. One incident occurred a year before, and the other took place almost two years after, the fatal crash.

In the published part of our opinion, we reject defendant's claim that because the charging document alleged that Cotham was a victim of the

crime of DUI causing bodily injury, evidence of Cotham's conduct on the two other occasions was admissible to show Cotham, not defendant, was the driver of the truck in the fatal collision. The claim is based on Evidence Code section 1103, subdivision (a), which states: "In a criminal action, evidence of the character or a trait of character (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) of the victim of the crime for which the defendant is being prosecuted" is admissible if the evidence is "[o]ffered by the defendant to prove conduct of the victim in conformity with the character or trait of character."

As we will explain, a "victim of the crime" for purposes of Evidence Code section 1103, subdivision (a) is a person at whom the defendant's conduct was directed and whose own conduct could serve to explain, justify, or excuse the defendant's conduct toward that person. Here, evidence of Cotham's character was not offered to support a claim of consent, self-defense, or any other theory of justification or excuse. Instead, defendant sought to introduce it to support his claim that Cotham, not defendant, committed the crime. However, character evidence is not admissible to support a claim of third party culpability (*People v. Davis* (1995) 10 Cal.4th 463, 501 [41 Cal.Rptr.2d 826, 896 P.2d 119]), and it would be an unwarranted expansion of the statute to adopt defendant's interpretation of Evidence Code section 1103, subdivision (a)(1).

We also reject defendant's claim that Cotham's prior conduct was admissible under Evidence Code section 1101, subdivision (b), which says that evidence of a person's conduct is admissible for a purpose other than to prove the person's disposition to commit such an act, i.e., it may be introduced to prove such things as "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented . . . ."

DUI and reckless driving are, unfortunately, common occurrences in California, and contrary to defendant's claim, Cotham's acts of driving were not sufficiently distinctive or unique to be admissible to establish the identity of the person who was driving the truck that caused the fatal collision in this case. Nor did Cotham's acts demonstrate a common plan to drive under the influence of alcohol. Consequently, the acts were not admissible pursuant to Evidence Code section 1101, subdivision (b).

In the unpublished parts of our opinion, we address defendant's other claims of error and conclude the judgment must be modified to correct sentencing error.

## FACTS

In the afternoon of June 17, 2001, defendant's pickup truck went through a stop sign and slammed into the victims' car.

Witnesses first saw the pickup truck being driven recklessly on Fair Oaks Boulevard toward California Avenue in Sacramento County. As traffic was waiting at a red light, the truck went at a high speed onto the gravel shoulder of the road, where it passed cars in the right hand lane and spun into the intersection. As the truck was driven away, it proceeded north on California Avenue at excessive speed on the wrong side of the road and through a stop sign, running at least one vehicle off of the road.

The truck was next seen driving south on Marshall Avenue. At the intersection of Fair Oaks Boulevard and Marshall Avenue, the truck went through a stop sign at a speed of over 50 miles per hour and collided with a car. Stephen Ramos, the driver of the car, and his wife, Melissa Madison, were killed. Their son, Christopher Ramos, suffered great bodily injury. The occupants of the truck—defendant and Michael Cotham—were thrown from the truck. Each suffered bodily injury.

Defendant and Cotham were both intoxicated at the time of the collision. Defendant's blood sample, taken about 90 minutes after the collision, showed a blood-alcohol level of .24 percent. Cotham's blood sample, taken about 40 minutes after the collision, showed a blood-alcohol level of .28 percent.

With one exception, witnesses to the events were unable to identify the driver of the truck that crashed into the Ramoses' car.

The exception was Michael Delgado, who had been defendant's friend since 1994 or 1995, and who had met Cotham once or twice. Delgado testified that on the day of the collision, he was with defendant and Cotham at defendant's home when the trio decided to go to a bar on Fair Oaks Boulevard. Defendant drove to the bar in his truck, with Cotham as his passenger. Delgado drove separately in his own vehicle. After several hours at the bar, they left, planning to return to defendant's house and then go to a restaurant to get something to eat. Defendant got into the driver's seat of his truck, and Cotham sat in the passenger's seat. Defendant and Cotham

followed as Delgado drove onto Fair Oaks Boulevard. When Delgado stopped for a red light at California Avenue, defendant drove his truck on the right hand shoulder and spun out into the intersection. Delgado did not witness the fatal collision at Marshall Avenue because, after observing defendant spin his truck at California Avenue, Delgado drove to defendant's house.[1]

Soon after the collision, Harold Durham and Nicole Major stopped to offer assistance. When they approached defendant, he asked what had happened. When told that there was a bad accident, defendant repeatedly said, "What did I do?" or "I can't believe I did this." He became upset and anxious.[2]

When California Highway Patrol (CHP) Officer Robert DiMiceli arrived at the scene, defendant was on an ambulance gurney. DiMiceli or one of the medical personnel asked defendant if he was the driver. Defendant responded either "yes," "yes, sir," or something to that effect.[3]

The prosecution presented the testimony of CHP experts in accident reconstruction, who explained that the physical evidence and the dynamics of the collision showed defendant was the driver of the truck that smashed into the Ramoses' car. Testifying for the defense, a retired CHP expert in accident reconstruction opined that Cotham was the driver and defendant was the passenger.

---

[1] Claiming Delgado concocted his testimony, the defense did not present evidence of the usual motivations for witness perjury, such as an attempt to conceal personal involvement in the crime, antagonism between witness and defendant, a desire to protect a third party, or an effort to obtain leniency on potential or pending charges. Instead, it pointed to some inconsistencies in Delgado's various reports of the events and emphasized that (1) Delgado drank excessively and was an admitted drug addict who had used methamphetamine, cocaine, and marijuana, and (2) Delgado was likely intoxicated at the time of the collision because he spent the day drinking with defendant and Cotham. Based on evidence that Delgado's drinking and drug abuse had caused problems with his wife, from whom he was separated at the time of trial, the defense suggested that Delgado had lost everything in life and was alone. According to the defense, Delgado went to a restaurant after leaving the bar, did not witness any of the driving incidents, and made up his "story" after reading newspaper accounts of the incident "because he doesn't have anything in his life where he can feel important and be a hero . . . ."

[2] The defense offered medical testimony that because of defendant's intoxication and the traumatic effect of the collision, including a likely concussion, he would have been confused and his comments would have been "little more than nonsensical statements."

[3] The defense pointed out that Officer DiMiceli did not file a report on the incident and that at the preliminary hearing, he initially said he did not have a conversation with defendant (DiMiceli later clarified that he asked only the one question and did not have what he would consider a conversation with defendant). In argument, the defense suggested that DiMiceli was simply lying about the admission.

Athins Christen and Scott Manning testified for the defense. Upon arriving together at a market on the corner of Fair Oaks Boulevard and Marshall Avenue, they witnessed the collision and its aftermath. Although they could not identify defendant or Cotham from the accident, both believed that the driver of the truck was thrown out against a building and the passenger was thrown out into some rocks. The building corresponded to the location where Cotham was found after the collision, and the rocks were by defendant's location. However, several matters cast doubt on the accuracy of their account of the incident. Christen's testimony regarding the order in which the truck's occupants were ejected was impeached by the inconsistent statement he had made to a defense investigator. When this was pointed out to him, Christen testified both occupants "pretty much flew out at the same time" and he "just kinda glanced at where they went at that time." And Christen's testimony was impeached in another respect. He said the truck became airborne when it hit the car, began to flip, and stayed airborne until the truck came down on an embankment. But the experts agreed the physical evidence showed the truck did not become airborne and did not flip. Likewise, Manning's testimony that the truck became airborne and began flipping end-to-end, doing a somersault, was impeached by expert evidence, as was his testimony that the truck never spun (the experts agreed the truck spun with a significant counterclockwise motion throughout the incident). Both witnesses acknowledged they were shocked by the incident, which happened very quickly. It thus appears that the rapidity of the incident, the shock of the witnesses and their misperception of the motion of the truck, and evidence that defendant was the driver combined to cast doubt on their testimony regarding the relative positions of the driver and passenger after the collision.

## DISCUSSION

### I

Defendant argues the trial court erred in excluding the following evidence:

About one year before the fatal collision, a witness reported that he and his son were almost struck by a car that had accelerated toward their street, fishtailed as it made the turn, and sped down the street. When the car stopped, the witness confronted the driver, Cotham, who was intoxicated and belligerent. Cotham ultimately was arrested regarding this incident, but was convicted only of resisting a peace officer.

Almost one year eight months after the fatal collision, an officer saw Cotham speeding and then spinning the tires of his car after stopping at a red

light. Cotham, whose blood-alcohol level at that time was .102 to .121 percent, was arrested and convicted of DUI.

In defendant's view, evidence of those two incidents was admissible under Evidence Code section 1103, subdivision (a)(1). (Further section references are to the Evidence Code unless otherwise specified.) We disagree.

Section 1103, subdivision (a)(1) sets forth an exception to the general rule that evidence of a person's character or trait of character, including specific instances of conduct, is not admissible to prove the person's conduct on a specified occasion. (§ 1101, subd. (a).)

As pertinent to this appeal, the statute states that "[i]n a criminal action, evidence of the character or a trait of character (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) of the victim of the crime for which the defendant is being prosecuted is not made inadmissible by Section 1101 if the evidence" is "[o]ffered by the defendant to prove conduct of the victim in conformity with the character or trait of character." (§ 1103, subd. (a)(1).)

At common law, the introduction of such character evidence was restricted to a few situations and, when admissible, was limited to evidence of reputation. (See *Michelson v. United States* (1948) 335 U.S. 469, 476–477 [93 L.Ed. 168, 174, 69 S.Ct. 213].) The rule evolved that in defense of a charge, the defendant could present evidence of his or her good character. (See *People v. Jones* (1954) 42 Cal.2d 219, 224 [266 P.2d 38]; *People v. Chrisman* (1901) 135 Cal. 282, 288 [67 P. 136].) If the defendant presented evidence of good character, then the prosecution could rebut with evidence of the defendant's bad character. (*People v. Hughes* (1954) 123 Cal.App.2d 767, 769 [267 P.2d 376].) With respect to a victim of a crime, the common law established that where self-defense was claimed in a prosecution for a crime involving violence, evidence of the alleged victim's violent and aggressive character could be introduced in support of the claim of self-defense. (See *People v. Lamar* (1906) 148 Cal. 564, 572–573 [83 P. 993].)[4]

---

[4] The common law also allowed the defendant in a prosecution for rape or other sex crimes to support a claim of consent—or in some jurisdictions a claim that the victim was lying—by introducing evidence of the alleged victim's promiscuity. (*People v. Shea* (1899) 125 Cal. 151, 152–153 [57 P. 885]; see 3 Jones on Evidence (7th ed. 1998) § 16:60, p. 238; 1 McCormick on Evidence (6th ed. 2006) § 193, pp. 775–781.) Now, however, all states prohibit or severely restrict the admissibility of propensity evidence with respect to the alleged victim of a sex crime. (See 3 Jones on Evidence, *supra*, § 16.60, p. 238.) In California, sections 782 and 1103, subdivision (c) restrict the use of such evidence.

When the Evidence Code was proposed in 1965, sections 1102 and 1103 were included to codify the limited circumstances in which character evidence could be introduced at common law. With respect to section 1103, the Law Revision Commission cited authorities reflecting that evidence of a victim's character for violence could be admitted in a trial for a crime of violence where self-defense is claimed. The commission said that section 1103 was a codification of this existing law. (Cal. Law Revision Com. com., Deering's Ann. Evid. Code (2004 ed.) foll. § 1102, p. 357.)

■ In this case, defendant did not seek to introduce evidence of an alleged victim's character in order to support a claim of consent, self-defense, or any other theory of justification or excuse. He wanted to use it to show that the alleged victim of a traffic collision caused by an intoxicated driver was in fact the perpetrator of the crime. However, character evidence is not admissible to support such a claim of third party culpability. (*People v. Davis, supra,* 10 Cal.4th at p. 501; *People v. Farmer* (1989) 47 Cal.3d 888, 921 [254 Cal.Rptr. 508, 765 P.2d 940], disapproved on another ground in *People v. Waidla* (2000) 22 Cal.4th 690, 724, fn. 6 [94 Cal.Rptr.2d 396, 996 P.2d 46]; see also Annot., Third-Party Similar Crimes (1994) 22 A.L.R.5th, 1, 237, § 61.)

Nevertheless, defendant contends that because he was charged with felony DUI by causing bodily injuries to both Cotham and Christopher Ramos (Veh. Code, § 23153, subds. (a) & (b)), Cotham was a "victim of the crime" and section 1103, subdivision (a)(1) broadly permits the introduction of character evidence whenever it relates to the victim of a charged crime. We are not persuaded.

■ The word "victim" is not a word of fixed meaning; it may be used in many ways to refer to many different persons or entities. Often, but not invariably, the Legislature has provided a definition of the word when it is used in a statutory scheme. (See, e.g., Pen. Code, §§ 136, subd. (3), 679.01, subd. (b), 1191.10, 11158; Gov. Code, § 13951, subd. (g).) The basic notion of a victim of a crime is the person who was the object of the crime—the person against whom the crime was committed. (*People v. Birkett* (1999) 21 Cal.4th 226, 232 [87 Cal.Rptr.2d 205, 980 P.2d 912].) However, this meaning can be limited or expansive depending upon the purpose of the statutory scheme in which it is used. (*People v. Crow* (1993) 6 Cal.4th 952, 957–960 [26 Cal.Rptr.2d 1, 864 P.2d 80]; *People v. Broussard* (1993) 5 Cal.4th 1067, 1071–1077 [22 Cal.Rptr.2d 278, 856 P.2d 1134].)[5]

---

[5] The range of meaning, from extremely narrow to rather broad, that is given to the word "victim" in varying circumstances is amply demonstrated by the authorities collected in 44 Words and Phrases (2006 supp.) pages 247–272.

■ We conclude that in enacting section 1103, subdivision (a)(1), the Legislature did not employ the word "victim" in the broad sense of anyone who could be said to have been injured by the defendant's conduct; instead, it intended to use the word in the limited sense of a person at whom the defendant's conduct was directed and whose own conduct could serve to explain, justify, or excuse the defendant's conduct toward that person. This was the existing common law when the Evidence Code was adopted and, as explained by the Law Revision Commission, section 1103 was intended to codify the existing law. (See *People v. Martinez* (2000) 22 Cal.4th 106, 129 [91 Cal.Rptr.2d 687, 990 P.2d 563] [when the Legislature enacts a measure as proposed by the Law Revision Commission, the commission's explanatory comments "are persuasive evidence of the Legislature's intent"]; *Brian W. v. Superior Court* (1978) 20 Cal.3d 618, 623 [143 Cal.Rptr. 717, 574 P.2d 788].)

Indeed, a broader interpretation of "victim" for purposes of section 1103, subdivision (a)(1) would lead to anomalous results. For example, character evidence is not admissible to support a claim of third party culpability. (*People v. Davis, supra,* 10 Cal.4th at p. 501.) However, defendant's expansive reading of section 1103, subdivision (a)(1) would permit such character evidence based upon the fortuitous circumstance that the allegedly culpable third party suffered injury. This is a distinction without relevance for the purpose of a third party culpability claim.

Defendant's interpretation of the statute also would lead to absurdity. For example, because Cotham and Christopher Ramos suffered bodily injury as a result of the collision, defendant was charged in counts three and four with felony DUI and felony driving with a blood-alcohol level over .08 percent (Veh. Code, § 23153, subds. (a) & (b)). However, it would have been sufficient to allege only that Christopher Ramos suffered bodily injury. Thus, under defendant's construction of section 1103, subdivision (a)(1), the admissibility of the Cotham character evidence would turn on whether the charging document identified Cotham as having suffered injury. The law cannot be so absurd.

■ And in a case where evidence of a person's character is not offered to explain, justify, or excuse the defendant's conduct toward that person, it would be absurd to allow the defendant to take the position that the person *was a victim* of the crime so the defendant could introduce evidence of the person's character in order to establish that the person *was not a victim* of the crime, but instead was the perpetrator.

In addition, the definition of "victim" that defendant urges us to adopt would result in an expansive and amorphous concept of admissibility of character evidence. In a crime of violence where self-defense is claimed, the victim's pertinent character trait is obvious and limited—his or her violent and aggressive behavior. In other instances, the allegedly pertinent character traits would be neither as obvious nor as limited. In this case, for example, the operator of the truck drove while intoxicated, in disregard of the rules of the road, in a careless and reckless manner, and without regard to the rights and safety of other persons and their property. Under defendant's theory of admissibility, any prior or subsequent conduct that reflected on any of those matters would be admissible with respect to anyone identified in the charging document as having been injured in the collision, even if the conduct did not involve driving. Such an interpretation of the statute does not make sense.

■ We conclude, consistent with comments of the Law Revision Commission, that section 1103, subdivision (a)(1) was a codification, rather than an expansion, of then-existing law. Thus, a victim for purposes of the statute is a person at whom the defendant's conduct was directed and whose own conduct could serve to explain, justify, or excuse the defendant's conduct toward that person.

Accordingly, the trial court wisely rejected what it correctly noted was defendant's "new and novel theory" that evidence of Cotham's character was admissible to show third party culpability.[6]

## II

We also reject defendant's contention that the evidence of Cotham's character was admissible pursuant to section 1101, subdivision (b).

■ Section 1101, subdivision (b) is another exception to the general rule that evidence of a person's character or trait of character is not admissible to prove the person's conduct on a specified occasion. (§ 1101, subd. (a).) Under

---

[6] In a parting effort to convince us that evidence of Cotham's character was admissible pursuant to section 1103, defendant asserts that he was attempting to offer the evidence to explain his behavior. Not so. The driver's reckless conduct placed Cotham, defendant, the occupants of the other car, and a number of spectators in a zone of danger. However, the conduct was not directed toward anyone in particular. The conduct of a person in the zone of danger would not explain the driver's conduct except, perhaps, to the extent the passenger was encouraging the driver, which would not be exculpatory. This was simply a case of alleged third party culpability, with the fortuitous happenstance that the allegedly culpable third party was one of the persons injured in the incident.

this exception, evidence of a person's conduct is admissible for a purpose other than to prove the person's disposition to commit such an act, i.e., it may be introduced to prove such things as "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented." (§ 1101, subd. (b).)

Here, defendant claims evidence of Cotham's driving in the two incidents summarized above was admissible under section 1101, subdivision (b) to prove Cotham's "identity" as the driver who caused the fatal collision with the Ramoses' car, and to show Cotham's "common plan" of "reckless and drunken driving." We are not persuaded.

In order for evidence of a specific instance of a person's conduct to be admissible as proof of that person's identity as the perpetrator of similar conduct on a different occasion, the two instances of conduct "must share common features that are sufficiently distinctive so as to support the inference that the same person committed both acts. [Citation.] 'The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.' [Citation.]" (*People v. Ewoldt* (1994) 7 Cal.4th 380, 403 [27 Cal.Rptr.2d 646, 867 P.2d 757].) This requires that the instances of conduct have sufficient characteristics in common which are sufficiently distinctive as to set them apart from other instances of similar conduct. (*People v. Rivera* (1985) 41 Cal.3d 388, 392 [221 Cal.Rptr. 562, 710 P.2d 362].)

We agree with the trial court that evidence of Cotham's driving on occasions prior to and after the fatal collision in this case was not admissible to prove the identity of the driver who caused the collision.

Driving under the influence of alcohol and reckless driving are, unfortunately, common occurrences. (See, e.g., *People v. Ochoa* (1993) 6 Cal.4th 1199, 1202–1203 [26 Cal.Rptr.2d 23, 864 P.2d 103]; *People v. Bennett* (1991) 54 Cal.3d 1032, 1034–1035 [2 Cal.Rptr.2d 8, 819 P.2d 849]; *People v. Watson* (1981) 30 Cal.3d 290, 293–294 [179 Cal.Rptr. 43, 637 P.2d 279]; *People v. Arndt* (1999) 76 Cal.App.4th 387, 392 [90 Cal.Rptr.2d 415]; *People v. Valenzuela* (1995) 40 Cal.App.4th 358, 360 [46 Cal.Rptr.2d 715]; *People v. Minor* (1994) 28 Cal.App.4th 431, 433 [33 Cal.Rptr.2d 641]; *People v. Hansen* (1992) 10 Cal.App.4th 1065, 1068–1069 [12 Cal.Rptr.2d 884]; *People v. Von Staden* (1987) 195 Cal.App.3d 1423, 1425–1426 [241 Cal.Rptr. 523]; *People v. Oyaas* (1985) 173 Cal.App.3d 663, 666–667 [219 Cal.Rptr. 243].) Thus, Cotham's prior and subsequent conduct

was not unique and distinctive. Sad to say, but even the substantially more egregious behavior that led to the fatal collision in this case was not unique or distinctive. (See *People v. Watson, supra,* 30 Cal.3d at pp. 293–294; *People v. Arndt, supra,* 76 Cal.App.4th at p. 392; *People v. Valenzuela, supra,* 40 Cal.App.4th at p. 360.)

In other words, the pattern and characteristics of the acts were not so unusual and distinctive to be like a signature. Nor can it be said that the acts were sufficiently similar to make them admissible under section 1101, subdivision (b). Cotham was alone in the prior incident. Although he drove at a speed that was excessive for the residential nature of the street, there is no evidence that he drove at the highly excessive speed at which defendant's truck was driven before the fatal collision. Cotham did not run through red lights and stop signs on a busy thoroughfare. In fact, he stopped after fishtailing his vehicle, rather than proceed on as did the driver of the truck after spinning out in an intersection. And, of course, there was no collision.

Defendant notes that the prior incident occurred on the Thursday before Father's Day, while the collision involved here occurred on Father's Day, albeit a year later. This gave them an "eerie resemblance," according to defendant. At trial, he tried to infuse meaning into the timing of the incidents by reference to an occasion in 1991 in which, after a verbal confrontation, Cotham assaulted his father. However, at various times, Cotham assaulted his mother, police officers, and numerous other people. Cotham's extensive history of criminal behavior dispels any notion that his misbehavior centers around his father or Father's Day.

Contrary to defendant's claim, no distinctive similarity was created by the fact that before the prior incident, Cotham had been drinking at Johnny's Bar, which was the same bar where he, defendant, and Delgado were drinking before the fatal collision, and that on each occasion Cotham left the bar in the "mid- to late afternoon." This was not unusual because both Cotham and defendant lived in the vicinity of Johnny's Bar and often went there.

Defendant views the prior incident and the fatal collision as being substantially similar because Cotham was, in the words of defendant's appellate counsel, "profoundly intoxicated" on both occasions. This overstates the record. It is true that a witness to the prior incident stated Cotham was intoxicated. But there is no evidence that he was profoundly intoxicated.

Defendant claims a distinctive similarity exists due to the fact that Cotham's driver's license was suspended at the time of each incident. But Cotham admitted that he regularly drove with a suspended or revoked license, which is common behavior by persons of Cotham's character.

Considered together, the alleged similarities between Cotham's prior behavior and the current offense are not sufficiently unique or distinctive as to imprint Cotham's " 'signature' " on both. (*People v. Rivera, supra*, 41 Cal.3d at p. 393.) Hence, evidence of the prior incident was not admissible to prove identity. (*Ibid.*)

The subsequent incident also was not admissible to prove the identity of the driver who caused the fatal collision. In the later event, Cotham was observed driving at an excessive speed. After stopping for a red light, he spun his tires when the light changed to green. He had an unlawful, but not profound, level of alcohol in his bloodstream. There was nothing unique about that incident and nothing similar to the fatal collision in this case.

We also reject the claim that Cotham's prior and subsequent acts of driving under the influence of alcohol were admissible to establish a common plan.

To be admissible to establish a common plan, evidence of other conduct "must· demonstrate 'not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.' " (*People v. Ewoldt, supra*, 7 Cal.4th at p. 402.) It must show the existence of a plan, rather than a series of similar, spontaneous acts. (*Id.* at p. 403; see *People v. Sam* (1969) 71 Cal.2d 194, 205 [77 Cal.Rptr. 804, 454 P.2d 700]; *People v. Scheer* (1998) 68 Cal.App.4th 1009, 1021 [80 Cal.Rptr.2d 676].)

Experience has shown that people ordinarily do not drive under the influence of alcohol as a result of a common plan or scheme. Rather, the act is a spontaneous failure to conform one's conduct to the requirements of the law and needs of public safety. Evidence of multiple incidents of DUI may reflect a disposition to commit such acts, but it does not demonstrate a common plan or scheme of which each incident is an individual manifestation. Thus, we agree with the trial court that the evidence was not admissible to establish a common plan. (*People v. Scheer, supra*, 68 Cal.App.4th at p. 1021.)

III–IX*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 445.

## DISPOSITION

The judgment is modified to stay, pursuant to Penal Code section 654, two of the one-year sentence enhancements imposed pursuant to Vehicle Code section 23558, thus reducing defendant's aggregate unstayed prison term to 14 years eight months.

As modified, the judgment is affirmed. The trial court is directed to amend the abstract of judgment accordingly, and to send a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

Morrison, J., and Robie, J., concurred.