Filed 8/22/25  P. v. Cortes CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G064652 |
| v. | (Super. Ct. No. 22CF0340) |
| JEFFREY CORTES, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Lewis Clapp, Judge. Affirmed and remanded with directions.

James M. Kehoe, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

In August 2019, Jeffrey Cortes drove under the influence of alcohol, lost control of the truck he was driving, and crashed. Cortes lied to the police and said that he was not driving the truck.

In December 2020, Cortes drove under the influence of alcohol, lost control of the truck he was driving, and crashed. Cortes lied to the police and said that he was not driving the truck.

As to the December 2020 incident, a jury found Cortes guilty of driving under the influence (DUI) causing injury and related offenses. The court granted Cortes probation with certain terms and conditions.

On appeal, Cortes claims the trial court erred by admitting evidence about his prior uncharged conduct. (Evid. Code, § 1101, subd. (b).)[1] We disagree and find that the court did not abuse its discretion.

Thus, we affirm the judgment; however, we are remanding the matter so the trial court can correct its records concerning fines and fees.

I.

FACTS AND PROCEDURAL BACKGROUND

On the evening of December 18, 2020, a driver of a food truck, L. Segura, entered a controlled intersection. Segura noticed a vehicle coming towards him, but Segura thought he had enough time to safely make a left hand turn. As Segura made the turn, the oncoming vehicle hit the rear of his food truck. The oncoming vehicle then lost control, collided into a tree, and rolled over into a parking lot.

At 12:30 a.m., police arrived on the scene in response to a

---

[1] Further undesignated statutory references are to the Evidence Code. We shall also generally omit the word "subdivision" or its abbreviation.

2

reported rollover traffic collision and saw a pickup truck lying on its side in a parking lot. The driver's side of the truck was on the ground. An officer looked inside the truck's cab and saw two people. Cortes was seated in the driver's seat. Another person, later identified as J. Aguilar, was on top of Cortes, trying to kick out the windshield.

Police helped Aguilar and Cortes out of the vehicle. Aguilar said that he was the passenger, and he pointed to Cortes when he was asked by police who was driving. Officers repeatedly asked Cortes if he was the driver, but he did not answer. Cortes smelled of alcohol, his eyes were bloodshot, and his speech was slurred.

Aguilar was taken to a hospital where he was treated for a brain injury and a facial laceration. Cortes was also treated for similar injuries. After being arrested for DUI, Cortes told the officer that "he wasn't driving." Cortes's blood-alcohol concentration (BAC) was estimated to be over .20 percent at the time of the accident.

*Court Proceedings*

In September 2022, the People filed a three-count information charging Cortes with DUI with injury, driving with a BAC of .08 percent or greater, and driving on a suspended license. The People also alleged a great bodily injury enhancement.

In March 2024, the trial court declared a mistrial after a jury was "hopelessly deadlocked." In July 2024, a second jury trial began with motions in limine (the relevant pretrial proceedings will be covered in more detail in the discussion section of this opinion).

In the defense portion of the trial, Cortes testified that Aguilar was driving the pickup truck, and that he switched positions with Aguilar

3

right after the accident. Aguilar invoked his constitutional right to remain silent and did not testify.

The jury found Cortes guilty of DUI with injury and driving with a BAC of .08 percent or greater. The jury found not true the great bodily injury enhancement. In a bifurcated trial, the court found Cortes guilty of driving on a suspended license. The court granted Cortes four years formal probation with 364 days of local custody, and with various other probation terms and conditions.

At sentencing, the trial court waived all fines and fees; however, the court's records do not reflect this part of Cortes's sentence. The Attorney General concedes the error, and we agree. Thus, on remand we direct the court to amend its records to accurately reflect its sentence as stated in the oral pronouncement of judgment.

II.

DISCUSSION

Cortes claims the trial court erred by admitting evidence about his earlier uncharged conduct under section 1101 (b). We disagree because we do not find that the court's ruling was either arbitrary or capricious.

A trial court's ruling under section 1101 (b) is reviewed for an abuse of discretion. (*People v. Kipp* (1998) 18 Cal.4th 349, 369.) "'Under the abuse of discretion standard, "a trial court's ruling will not be disturbed, and reversal . . . is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice."'" (*People v. Foster* (2010) 50 Cal.4th 1301, 1328–1329.) This is a highly deferential standard of review, "'discretion is abused only if the court exceeds the bounds of reason, all of the circumstances

4

being considered.'" (*People v. Green* (1995) 34 Cal.App.4th 165, 182–183.)

In the remainder of the discussion, we will: A) review relevant legal principles; B) summarize the proffered section 1101 (b) evidence and the trial court's ruling; and C) analyze the facts as applied to the law.

### A. *Legal Principles*

"Except as otherwise provided by statute, all relevant evidence is admissible." (§ 351.) "'Relevant evidence' means evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (§ 210.)

Generally, public policy prohibits a prosecutor from introducing evidence concerning a defendant's uncharged conduct or offenses in order to prove a defendant's character. (*People v. Cottone* (2013) 57 Cal.4th 269, 285.) "Except as provided . . . , evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." (§ 1101 (a).)

The purpose of this evidentiary rule "is to assure that a defendant is tried upon the crime charged and is not tried upon an antisocial history." (*People v. Aeschlimann* (1972) 28 Cal.App.3d 460, 473.) However, a well-established exception to the general rule is that a defendant's uncharged conduct may be admitted "'not to prove a person's predisposition to commit such an act, but rather to prove some other material fact.'" (*People v. Rocha* (2013) 221 Cal.App.4th 1385, 1393.)

"Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge,

identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act." (§ 1101 (b).)

"The least degree of similarity" between the charged and the uncharged conduct "is required in order to prove intent." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.) "A greater degree of similarity is required in order to prove the existence of a common design or plan." (*Ibid.*) "The greatest degree of similarity is required for evidence of uncharged misconduct to be relevant to prove identity. For identity to be established, the uncharged misconduct and the charged offense must share common features that are sufficiently distinctive so as to support the inference that the same person committed both acts." (*Id.* at p. 403.)

If a trial court finds the proffered evidence relevant under section 1101 (b), it must also consider whether the potential for undue prejudice outweighs the probative value. (§ 352.) Generally, "'[t]he probative value of the uncharged offense evidence must be substantial and must not be largely outweighed by the probability that its admission would create a serious danger of *undue prejudice*, of confusing the issues, or of misleading the jury.'" (*People v. Lewis* (2001) 25 Cal.4th 610, 637, italics added.)

A trial court's ruling under section 1101 (b) is reviewed based on the proffered evidence—or offer of proof—known to the court at the time of its decision. (See *People v. Hendrix* (2013) 214 Cal.App.4th 216, 243.)

*B. The Proffered Evidence and the Trial Court's Ruling*

The People filed a pretrial motion seeking to admit evidence under section 1101 (b). After summarizing the facts in the instant case, the People summarized the facts of an earlier auto accident:

"On August 7, 2019, Officer Valencia with Fullerton Police

Department was dispatched to the scene of a collision at 2:12 am. When Officer Valencia arrived, he located a white 2011 Toyota Tacoma that was rolled over on its driver's side. Several bystanders pointed to a male Hispanic who they advised was the driver. Officer Valencia contacted Jeffery Cortes (hereinafter "Defendant"). When asked if he was the driver. Defendant stated 'no'. Defendant stated the car was registered to him but he was too drunk to drive so he had 'Rolando' drive the car. Defendant stated that [Rolando] had taken off after the accident in a 'hit and run'. Officer Valencia then spoke to witness K[.] Trahan. Ms. Trahan stated that she saw the Defendant's car turned over so she pulled to the side of the road to check on him. Defendant told her she needed to give him a ride because he had a prior DUI and needed to 'get out of there'. He told Ms. Trahan that he was the driver and was going to blame it on a hit and run instead. Officer Valencia conducted a DUI investigation and ended up arresting Defendant for DUI.

"On March 5, 2021, Defendant plead guilty to two misdemeanors: Ct. 1. 23152(a) and Ct. 2. 23152(b)."

After the trial court listened to extensive oral arguments from both parties at a pretrial hearing, and after asking questions of the attorneys, the court made a ruling under section 1101 (b) as follows:

"In both instances the accused is alleged to have been driving under the influence, in both instances there was an accident, in both instances the accused was driving a truck. And I know driving is an issue in this case, but the accident in this case involved the defendant being in a truck that was in an accident. And the truck tipped over in this case, just like it did in the prior case. And in the prior case, the defendant asserted he was not the driver. [¶] And it should be clear that in that case, apparently, in some way, it was established that he was the driver in that prior and that he was being

7

untruthful about that.

"And so it seems to the Court that that fact that he lied about being -- that he was untruthful about being the driver in that prior has probative value to -- to the current case and whether he was the driver in the current case." After citing two published cases, *People v. Molano* (2019) 7 Cal.5th 620 (*Molano*), and *People v. Scally* (2015) 243 Cal.App.4th 285 (*Scally*), the trial court continued:

"So I'm not saying that the defendant's prior untruthfulness about not being the driver in that prior DUI comes in to prove the DUI, the driving under the influence. I'm -- I believe that it should come in to show that he has -- in that [earlier] case he had the intent to avoid culpability by saying that he wasn't the driver, and I think that the fact that he's done that before should be admissible in this case.

"Now, again, I know it's prejudicial to bring in evidence that he was involved in a DUI accident previously, and that's why we are going to -- I'm ordering that it be sanitized in such a way that the People's evidence would be limited to showing that he was involved in a DUI accident previously on a prior occasion, and on that occasion, he was untruthful when he said he was not the driver, and it turned out that he was the driver in that case. I don't know that we need much more than that.

"I recognize that it's prejudicial, but I do think it has probative value to -- for the People to establish what his intent was in saying, on this occasion, that he was not the driver. And it does have some probative value with regard to identity. [¶] So that's the Court's ruling on that issue."

During the People's case, a stipulation was read to the jury: "On August 7, 2019, defendant was driving his truck alone at night. Defendant crashed the truck and rolled it to where the truck rested on the driver's side.

8

On scene, defendant told Officer Valencia that he was not the driver of the truck and someone else was. That was false. Defendant was the driver." Prior to Cortes testifying, the following stipulation was also read to the jury: "Regarding the August 7, 2019, incident, some point after charges were filed, defendant admitted that he was the driver."

The trial court instructed the jury:

"The People presented evidence, by stipulation of both parties, that the defendant committed another offense that was not charged in this case. [¶] You may, but are not required to, consider that evidence for the limited purpose of deciding whether: [¶] The defendant was untruthful about whether he was the driver on December 18, 2020. [¶] In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offense and the charged offenses. [¶] Do not consider this evidence for any other purpose. [¶] Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime. [¶] The uncharged offense is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of Driving Under the Influence in this case. The People must still prove each charge beyond a reasonable doubt." (CALCRIM No. 375.)

*C. Application and Analysis*

Under an abuse of discretion standard of review, "'exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue.'" (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977.)

"'Evidence of an uncharged offense is usually sought to be admitted as "evidence that, if found to be true, proves a fact from which an

9

inference of another fact may be drawn." [Citation.] As with other types of circumstantial evidence, its admissibility depends upon three principal factors: (1) the *materiality* of the fact sought to be proved or disproved; (2) the *tendency* of the uncharged crime to prove or disprove the material fact; and (3) the existence of any *rule* or *policy* requiring the exclusion of relevant evidence.'" (*People v. Williams* (1988) 44 Cal.3d 883, 905.)

Here, it was apparent that the primary disputed fact during the trial was whether Cortes was the driver of the pickup truck on December 18, 2020. Of course, this disputed fact was an essential element of both of the charged DUI offenses. (Veh. Code, §§ 23152 (b), 23153.)

Based on the proffered evidence, in the earlier 2019 collision Cortes drove under the influence, overturned his truck, and then lied about not being the driver. We find that the trial court reasonably determined that this evidence was *material,* or had "probative value" as to "whether [Cortes] was the driver in the current case."

We also find that the trial court reasonably determined that the proffered evidence had a *tendency* in reason, or was relevant to inferentially identify Cortes as the driver in the instant case. (See *People v. Williams, supra,* 44 Cal.3d at p. 905 ["'Evidence of an uncharged offense is usually sought to be admitted as "evidence that, if found to be true, proves a fact from which an inference of another fact may be drawn'"].) The court stated that in the earlier August 2019 accident Cortes "had the intent to avoid culpability by saying that he wasn't the driver, and I think that the fact that he's done that before should be admissible in this case."

We find that the trial court also appropriately analyzed whether the uncharged conduct evidence should nevertheless be excluded under section 352. The court reasonably determined that the proffered evidence was

more probative than prejudicial. Additionally, to guard against *undue* prejudice, the court "sanitized" the section 1101 (b) evidence so that the People "would be limited to showing that [Cortes] was involved in a DUI accident previously on a prior occasion, and on that occasion, he was untruthful when he said he was not the driver." Indeed, the stipulation read to the jury did not even mention the word "DUI."

The trial court also carefully instructed the jury regarding the limited use of the 1101 (b) evidence. The court instructed the jurors that they could <u>only</u> consider the "evidence for the limited purpose of deciding whether: [¶] The defendant was untruthful about whether he was the driver on December 18, 2020." (See CALCRIM No. 375.) Importantly, we note that the court did not instruct the jury that the evidence regarding the August 2019 accident could be used for any other purposes. (See § 1101 (b) [to show "motive, opportunity, intent, preparation, plan, knowledge," etc.].)

We find that the two cases cited by the trial court when making its section 1101 (b) ruling are also supportive of its analysis. (See *Scally, supra,* 243 Cal.App.4th 285; see also *Molano, supra,* 7 Cal.5th 620.)

Section 1101 (b) evidence may be properly introduced by a prosecutor to rebut a defense. (*Scally, supra,* 243 Cal.App.4th at p. 287.) In *Scally*, defendant was charged with pimping and pandering Dakota. (*Id.* at pp. 286–287.) At trial, the prosecution introduced text messages between defendant and Dakota. An experienced vice officer opined the messages were "consistent with a pimp-prostitute relationship." (*Id.* at p. 289.) Under section 1101 (b), the trial court further allowed the prosecution to introduce similar text messages with persons other than Dakota. Defendant argued that this was improper character evidence under section 1101 (a). (*Scally*, at p. 287.) The Court of Appeal disagreed: "We conclude the evidence was relevant to

11

rebut the defense that the prostitute was merely defendant's girlfriend—a nonpropensity basis for relevance—and thus we affirm." (*Ibid.*)

The probative value of evidence under section 1101 (b) may also be properly found to outweigh its prejudicial effect under section 352. (*Molano, supra,* 7 Cal.5th at p. 666.) In *Molano,* defendant was charged with the murder of McKenna, and a special circumstance that he committed the murder during a rape. (*Id.* at p. 628.) At trial, the prosecution introduced evidence that defendant had previously "strangled his wife, Brenda, to unconsciousness." (*Id.* at p. 664.) Defendant argued the section 1101 (b) evidence was inflammatory character evidence. (*Id.* at pp. 664–665.) The Supreme Court disagreed: "Defendant's assault on Brenda was relevant to prove that he intentionally used deadly force on McKenna and to defeat his claim that her death was accidental. The jury was properly instructed on the limitations on how the evidence could be used." (*Id.* at p. 664.) The Court also found that the trial court's section 352 analysis did not constitute an abuse of discretion: "Defendant's denial of criminal intent and his claim of accident made his prior assaultive conduct particularly probative. The spousal assault, while certainly blameworthy, was not unduly inflammatory compared to the gruesome murder of McKenna." (*Id.* at p. 666.)

Here, similar to the evidence and analysis in *Scally*, the trial court properly admitted evidence of Cortes's prior untrue statements to the police regarding the accident on August 7, 2019, for the limited purpose of rebutting his defense that he was not the driver in the December 18, 2020, accident. And again, the trial court specifically instructed the jury in this case that the section 1101 (b) evidence was admitted "for the limited purpose of deciding whether: [¶] The defendant was untruthful about whether he was the driver on December 18, 2020." (See CALCRIM No 375.)

12

Moreover, similar to the Court's analysis in *Molano*, the trial court in this case reasonably analyzed that the section 1101 (b) evidence was not *unduly* prejudicial under section 352. That is, the August 2019 evidence only mentioned the fact of Cortes's prior accident, and his lying about not being the driver, which presumably would have been no more inflammatory than the instant charges of DUI with injury, and driving with a BAC of .08 percent or greater. (See *People v. Ho* (2018) 26 Cal.App.5th 408, 416 [prejudicial evidence within the meaning of section 352 is evidence "which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues"].)

In sum, we find the trial court was thoroughly conversant with the relevant legal principles and the relevant facts. The court then made a reasoned judgment within the bounds of its discretion. The court's analysis was certainly not arbitrary or capricious. Thus, we hold that the trial court did not abuse its discretion by admitting the proffered evidence under section 1101 (b). (See *People v. Green*, *supra*, 34 Cal.App.4th at pp. 182–183 ["'discretion is abused only if the court exceeds the bounds of reason'"].)

Cortes argues that the case of *People v. Tackett* (2006) 144 Cal.App.4th 445 (*Tackett*), compels a different result. We disagree.

In *Tackett*, a truck sped through a stop sign at over 50 miles per hour and collided with a car, killing two of its occupants and injuring another. (*Tackett*, *supra*, 144 Cal.App.4th at p. 450.) Two people were thrown from the truck and suffered bodily injury; those two people were defendant and his friend M. Cotham. (*Ibid*.) After the collision, defendant repeatedly said to two bystanders who stopped and offered assistance, "'What did I do' or 'I can't believe I did this.'" (*Id*. at p. 451.) One of the first responders asked defendant if he was the driver of the truck, and he "responded either 'yes,'

13

'yes, sir,' or something to that effect." (*Ibid*.) Later, defendant and Cotham's blood samples were drawn, which showed that they were both intoxicated at the time of the collision. (*Id*. at p. 450.)

The People charged defendant with DUI, driving with a BAC of .08 percent or greater, and two counts of gross vehicular manslaughter while intoxicated. (*Tackett*, *supra*, 144 Cal.App.4th at p. 448.) At trial, defendant sought to admit evidence that Cotham had two prior incidents where he drove while under the influence of alcohol. (*Id*. at pp. 452–453.) Defendant sought to admit the 1101 (b) evidence "to prove Cotham's 'identity' as the driver who caused the fatal collision . . . , and to show Cotham's 'common plan' of 'reckless and drunken driving.'" (*Id*. at p. 457.) The trial court excluded the evidence, and the Court of Appeal agreed. (*Ibid*.)

"We agree with the trial court that evidence of Cotham's driving on [prior] occasions . . . was not admissible to prove the identity of the driver who caused the collision. [¶] Driving under the influence of alcohol and reckless driving are, unfortunately, common occurrences. [Citations.] Thus, Cotham's prior and subsequent conduct was not unique and distinctive." (*Tackett*, *supra*, 144 Cal.App.4th at pp. 457–458.) The court also rejected defendant's argument that the evidence was admissible to show a common plan or scheme: "Experience has shown that people ordinarily do not drive under the influence of alcohol as a result of a common plan or scheme. Rather, the act is a spontaneous failure to conform one's conduct to the requirements of the law and needs of public safety." (*Id*. at p. 459.)

Here, unlike *Tackett*, Cortes's prior conduct in August 2019, and his subsequent conduct in December 2020, was not simply that he drove under the influence of alcohol. Rather, what was "unique and distinctive" was that on both occasions while driving under the influence of alcohol Cortes was

14

responsible for a rollover collision in a truck, and then he lied about not being the truck's driver. (Compare *Tackett, supra,* 144 Cal.App.4th at p. 458.)

Cortes's evasive conduct after both accidents was also somewhat similar. After the August 2019 accident, Cortes admitted to a witness that he was driving, and then asked for a ride in order to avoid responsibility. When the witness did not cooperate with his plan, Cortes then concocted a story and lied to the police and claimed that his friend was driving. Similarly, in the December 2020 accident, when questioned by police very shortly after the accident, Cortes did not admit that he was the driver, rather, he remained silent. Then, after Cortes had later been arrested for DUI, he then concocted a story and lied to the police and claimed that his friend and passenger (Aguilar) was driving. And during the trial, he repeated that claim. Moreover, to explain how it was that he was found in the driver's seat of the truck, Cortes testified that he had switched places with Aguilar immediately after the accident. (See § 1101 (c) ["Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness"].)

In short, the Court of Appeal's opinion in the case of *Tackett, supra,* 144 Cal.4th 445, does not alter our analysis.

Finally, Cortes also argues the trial court erred when it admitted evidence about the August 2019 accident because he contends it was not sufficiently similar to the December 2020 accident. Cortes points out some of the factual differences between the two accidents. For instance, Cortes notes that he was alone in the August 2019 accident, but he was with a passenger (Aguilar) in the December 2020 accident. While Cortes is correct that there are some factual differences between the two incidents, there were also similarities. Particularly, Cortes's relevant statements to the police in which he lied about being the driver in both the 2019 and 2020 accidents.

15

In any event, under an abuse of discretion standard of review, we cannot reweigh the evidence, or substitute our judgment for that of the trial court. (See *People v. Superior Court* (*Alvarez*), *supra*, 14 Cal.4th at p. 978 ["""An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge"""].) The more pertinent question for this court is whether the trial court was arbitrary and/or capricious in *its* application of the appropriate law to the relevant facts. And, as we have discussed, we do not find the court's ruling to be arbitrary or capricious.

To reiterate and conclude, although perhaps a different judge would have made a dissimilar section 1101 (b) ruling based on the same facts, we cannot say that the trial court's ruling in this case was an abuse of discretion. (See *People v. Carmony* (2004) 33 Cal.4th 367, 377 ["a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it"].)

## III.

## DISPOSITION

On remand, we direct the trial court to correct the minute order and the terms of probation to accurately reflect its oral pronouncement of judgment. In all other respects, the judgment is affirmed.


MOORE, J.

WE CONCUR:


SANCHEZ, J.


MOTOIKE, ACTING P. J.

17