Filed 7/24/13  P. v. Castillo CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E054665 |
| v. | (Super.Ct.No. RIF1102245) |
| EVA MARIE CASTILLO | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Eric G. Helgesen, Judge. (Retired judge of the Tulare Mun. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Susan L. Ferguson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Lilia E. Garcia and Kristine A. Gutierrez, Deputy Attorneys General, for the Plaintiff and Respondent.

## I.  INTRODUCTION

A jury found defendant and appellant Eva Marie Castillo guilty of possession of methamphetamine in violation of Health and Safety Code section 11377, subdivision (a) (count 1) and possession of methamphetamine while in a penal institution in violation of Penal Code section 4573.6 (count 2).  In a bifurcated trial, defendant admitted an allegation that she had been convicted of gross vehicular manslaughter while intoxicated in violation of Penal Code section 191.5, subdivision (a),[1] a serious and violent felony for purposes of the "Three Strikes" law.

The court denied defendant's request to dismiss the strike allegation pursuant to section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).  She was sentenced to a prison term of two years, to be served consecutively to her sentence of eight years for other matters not before the court.

On appeal, defendant claims the trial court erred in admitting evidence of two prior incidents under Evidence Code section 1101, subdivision (b).  Defendant further argues she should be permitted to withdraw her plea as to the strike prior allegation because it was based upon a mistaken belief that her prior conviction qualified as a strike.  In the alternative, she argues that the plea should be vacated because of her attorney's ineffective assistance.  The final issue on appeal is whether the trial court erred by refusing to dismiss the strike prior allegation.

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

We agree with defendant that the trial court erred by allowing evidence of one prior incident, but did not err in allowing evidence of a second incident. We conclude, however, that the error as to the evidence of the first incident was harmless. We reject defendant's arguments challenging her admission of the strike prior allegation. Finally, the court did not abuse its discretion in denying defendant's *Romero* motion.

## II. FACTUAL SUMMARY

On April 18, 2011, Deputy Katie Snell was conducting a security check at the Robert Presley Detention Center in Riverside County. Deputy Snell was checking the sixth floor when she discovered a note on the floor between cells 35 and 37. The note was in a plastic bag attached to strings and weighted objects. It was addressed to "Yoli" and signed by "Kat." The note read: "Yoli, hey sweetheart. Hey, I have a question for you . . . . Is there any way you can get a line from Eva for me? I really want to get high before I go upstate." On the side of the note, someone responded: "How come you don't ask her, silly Kat? You know she'll give it to you. And if you're too shy, I'll mention it to her that you want one. Okay?"

Deputy Snell and Deputy Kori Barbula conducted a search of cells 35 (occupied by Yolanda Neri), 37 (occupied by Shirley "Kat" Vanderdoes), and 41 (occupied by defendant). No drugs were found in the cells.

The deputies then received permission to conduct a strip search of defendant. Defendant's underwear had a sanitary pad attached to it. There was no blood on the pad, but there appeared to be some bodily fluid, such as urine or discharge, on it. One end of

3

the pad was open. Inside the pad were two plastic bags folded inside six pieces of paper. Methamphetamine was inside the plastic bags. Defendant told Deputy Snell: "It's nobody's fault but mine."

III. ANALYSIS

A. *Admission of Evidence of Prior Uncharged Crimes*

Defendant contends the court erred in allowing the prosecution to introduce evidence of two prior uncharged acts in which defendant concealed contraband inside her pants. In the first incident, defendant concealed a package of stolen sausage in her pants; in the second, she concealed baggies of methamphetamine in her shorts. We agree with defendant as to the evidence of the concealed sausage, but hold the error was harmless. We find no abuse of discretion as to the evidence of concealing methamphetamine in her shorts.

1. Procedural Background

Prior to trial, the prosecution indicated its intention to introduce, pursuant to Evidence Code section 1101, subdivision (b), evidence of two prior incidents in which defendant possessed contraband. The first incident occurred in 2006 following a traffic stop of defendant for driving a vehicle without a license plate. Prior to conducting a search incident to arrest for driving with a suspended license, the officer asked defendant if she had anything illegal on her person. Defendant replied that she had "a sausage in [her] pants." She then explained she had taken a package of sausage from a store. The officer found the package in the right ankle area of defendant's pant leg.

4

The second incident occurred in 2007 during a search of defendant's home pursuant to a search warrant. An officer asked defendant if she possessed any contraband. Defendant said she possessed methamphetamine. Defendant then removed two plastic bags of methamphetamine from inside the back of her basketball style shorts.

The prosecution argued that these incidents of concealing a sausage and methamphetamine inside her pants demonstrates a common design or modus operandi and tends to prove defendant's knowledge of the two baggies of methamphetamine found inside her sanitary pad. Defendant argued that the evidence should not be admitted because the prior incidents of hiding contraband were not substantially similar to the facts in this case. The trial court ruled that the evidence was admissible.

After the evidence of the 2006 sausage incident was introduced at trial, the court admonished the jury that the evidence could be used only for the limited purpose of showing "a mode of conduct, modus operandi, potentially, if you find that to be true, in that the defendant might have had experience hiding things in her clothing before that were considered contraband."

After the evidence of the 2007 incident of pulling methamphetamine out from the back of her basketball shorts, the court told the jury that the evidence could be used for the limited purpose of showing "knowledge on the part of the defendant, if you find it shows that in fact, of the nature and quality of a controlled substance, to wit, methamphetamine, and also to the common scheme or plan of hiding things."

## 2. Standard of Review

We review a trial court's decision regarding admission of evidence of uncharged crimes for abuse of discretion. (*People v. Scheer* (1998) 68 Cal.App.4th 1009, 1018.) A proper exercise of discretion is "'neither arbitrary nor capricious, but is an impartial discretion, guided and controlled by fixed legal principles, to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice. [Citations.]' [Citation.]" (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977.)

## 3. Analysis

Evidence Code section 1101, subdivision (a) prohibits the admission of evidence of a person's character to prove a person's conduct on a specified occasion. However, evidence of uncharged acts committed by the defendant is admissible to prove some other fact, such as identity, common design or plan, knowledge, intent, motive, opportunity, or absence of mistake or accident. (Evid. Code, § 1101, subd. (b).) Here, the prosecution offered the evidence to show a common design or modus operandi of concealing items in defendant's pants.

"Evidence of a common design or plan . . . is not used to prove the defendant's intent or identity but rather to prove that the defendant engaged in the conduct alleged to constitute the charged offense." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 394, fn. omitted (*Ewoldt*).) In *Ewoldt*, the court explained that the requisite degree of similarity between the uncharged misconduct and the charged offense varies depending upon what fact the

6

evidence is offered to prove.  (*Id.* at pp. 402-403.)  The least degree of similarity is required when the evidence is offered to prove the defendant's intent.  (*Id.* at p. 402.) The greatest degree of similarity is required to prove identity.  (*Id.* at p. 403.)  "'The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.'"  (*Ibid.*)

Evidence offered to show a common plan or design requires a degree of similarity that falls between that required to prove intent and identity.  (*Ewoldt, supra,* 7 Cal.4th at p. 402.)  "To be admissible to establish a common plan, evidence of other conduct 'must demonstrate "not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations."'  [Citation.]  It must show the existence of a plan, rather than a series of similar, spontaneous acts.  [Citations]."  (*People v. Tackett* (2006) 144 Cal.App.4th 445, 459.)

"'[A] common scheme or plan focuses on the manner in which the prior misconduct and the current crimes were committed, i.e., whether the defendant committed similar distinctive acts of misconduct against similar victims under similar circumstances.'  [Citation.]"  (*People v. Walker* (2006) 139 Cal.App.4th 782, 803.) While the common features must indicate the existence of a plan, the plan need not be distinctive or unusual.  (*Ewoldt*, *supra,* 7 Cal.4th at p. 403.)  "Where the connection between the uncharged offense and the ultimate fact in dispute is not clear, the court

7

should exclude the evidence. [Citation.]" (*Brown v. Smith* (1997) 55 Cal.App.4th 767, 791.)

In *Ewoldt*, the court discussed *People v. Lisenba* (1939) 14 Cal.2d 403 and *People v. Ing* (1967) 65 Cal.2d 603 as examples of cases in which the court upheld the admission of prior crimes evidence because the acts were similar enough to prove a common plan or design. In *Lisenba*, the defendant was charged with killing his wife by drowning her in a bathtub. (*People v. Lisenba, supra,* at pp. 406-407, cited in *Ewoldt, supra,* at pp. 394-395.) The trial court admitted evidence that the defendant had killed a previous wife by drowning her in a bathtub. (*People v. Lisenba, supra,* at p. 424.) There was evidence that both killings were committed so that the defendant could collect the proceeds of life insurance policies. (*Id.* at pp. 413-414, 426.) In *Ing*, the defendant physician was charged with committing rape against a patient. The defendant gave the patient a shot that caused her to pass out, then had sexual intercourse with her. (*People v. Ing, supra,* at p. 607.) The court allowed evidence of prior uncharged instances in which the defendant gave patients a shot, causing them to go unconscious, then raped them. (*Id.* at p. 608.)

*Ewoldt* discussed *People* v. *Sam* (1969) 71 Cal.2d 194 to illustrate the improper admission into evidence of uncharged acts to establish a common design or plan. (*Ewoldt, supra,* 7 Cal.4th at pp. 396-397.) In *Sam*, the defendant stomped on the victim's stomach during a fight, which caused the victim's death. (*People v. Sam, supra,* at p. 199.) In his trial for murder, the trial court admitted evidence of incidents in which the defendant kicked his girlfriend during a drunken argument and, on a separate occasion,

8

kicked another person during an argument.  (*Id.* at pp. 200-201.)  The California Supreme Court reversed, holding that the prior incidents were spontaneous acts, not a common design or plan, because there was no connecting link between the prior crimes and the current offense.  (*Id.* at pp. 205-206.)

Two more recent cases are instructive.  In *People v. Tackett*, *supra*, 144 Cal.App.4th 445, the trial court did not allow evidence of a third party's prior acts of driving a vehicle while intoxicated.  The Court of Appeal agreed, stating that "people ordinarily do not drive under the influence of alcohol as a result of a common plan or scheme."  (*Id.* at p. 459.)  Although evidence of driving under the influence might reflect a disposition to commit such an act, "it does not demonstrate a common plan or scheme of which each incident is an individual manifestation."  (*Ibid.*)

In *People v. Scheer*, *supra*, 68 Cal.App.4th 1009, the defendant was charged with felony hit and run.  After a car collided with the defendant's car in an intersection, bystanders attempted to detain the defendant.  (*Id.* at p. 1015.)  The defendant, however, fled the scene.  (*Ibid.*)  The court allowed the prosecution to introduce evidence that the defendant had, four years before the collision, failed to pull over when police attempted to make a traffic stop of his vehicle and led police on a five-minute pursuit through residential streets.  (*Id.* at p. 1017.)  The Court of Appeal held the admission of the prior incident was error.  (*Id.* at p. 1021.)  Neither flight, the court explained, "was a planned event.  Instead, each was a spur-of-the-moment response to an unexpected event, i.e., the

9

sudden appearance of the police in the prior instance and the attempt by volunteer bystanders to detain him after the accidental collision in the other." (*Ibid.*)

Here, the incident involving the sausage in defendant's pant leg bears almost no similarity to the facts in the charged offense. Because the contraband in the prior incident was sausage, the evidence has no probative value on the issue of defendant's knowledge that the contraband found in her sanitary pad in 2011 was methamphetamine. As for evidence that it indicates a common plan or scheme to hide contraband inside her pants, the similarities are weak. The sausage was found in a pant leg near her right ankle. Because it is unlikely that one would drive a car with a package of sausage near the foot that presses on the gas and brake pedals, the sausage was most likely placed there to conceal it from the officer that made the traffic stop. This suggests a spontaneous or spur-of-the-moment act, rather than a planned event. In short, the nature of the contraband (sausage), its location on her person (right pant leg at the ankle), and its apparent spontaneous manner of placement bears no meaningful resemblance to the act of secreting methamphetamine inside a sanitary pad inside her underwear. We thus conclude that the court erred in allowing the facts regarding the 2006 sausage incident into evidence.

The court did not err in allowing evidence of the 2007 incident involving methamphetamine in defendant's basketball shorts. First, the evidence was admissible to establish defendant's knowledge of the character and nature of methamphetamine as a controlled substance. Defendant argues she "was not claiming that she was not familiar

10

with the character and nature of methamphetamine." However, defendant's plea of not guilty put all of the elements of the offenses in issue. (See *People v. Lindberg* (2008) 45 Cal.4th 1, 23; *People v. Balcom* (1994) 7 Cal.4th 414, 422.) Defendant's knowledge that methamphetamine is a restricted drug is an element of the charged offense the prosecution was required to prove. (*People v. Martin* (2001) 25 Cal.4th 1180, 1184; *People v. Palaschak* (1995) 9 Cal.4th 1236, 1242.) Even if defendant did not actually dispute the issue at trial, the "'prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense.' [Citation.]" (*People v. Jones* (2011) 51 Cal.4th 346, 372.) The fact that defendant produced bags of methamphetamine from her shorts when asked if she possessed any illegal contraband is relevant to prove that she knew that methamphetamine was a restricted drug when the same substance was found in her sanitary pad in 2011.

Moreover, the court could have reasonably concluded that the evidence that she was hiding methamphetamine in her basketball shorts is sufficiently similar to the facts in the charged crime to show a common plan of hiding methamphetamine in her pants or underwear. Although it is not clear when defendant put the methamphetamine in her basketball shorts, a jury could reasonably conclude she did so pursuant to a plan to hide the contraband where it would not be found upon a search of her residence—i.e., in her shorts (or her underwear inside her shorts).

11

The facts of the 2007 incident differ from the facts in the present case in one significant respect. In 2007, she hid the methamphetamine in her shorts or underwear; in 2011, the methamphetamine was in a sanitary pad in her underwear. The latter method indicates greater forethought and planning than merely putting the drug in the back of her shorts. Nevertheless, the prior act evidencing a common plan or scheme need not have a high degree of similarity to the facts in the present case. (*Ewoldt, supra,* 7 Cal.4th at pp. 402-403.) Instead, there must be "'such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.'" (*Id.* at p. 402.) Here, the court could reasonably conclude that defendant's acts of hiding methamphetamine in her shorts (in 2007) and in her sanitary pad (in 2011) were both manifestations of a plan to hide drugs in her pants or underwear to avoid detection during a search of her residence.

Evidence of prior acts that is admissible to show a common plan may be excluded if its probative value is substantially outweighed by the probability that its admission will require undue consumption of time or create a substantial danger of undue prejudice, confusion of the issues, or misleading the jury. (Evid. Code, § 352.) Prejudice in this context is not the prejudice or damage to a defense that naturally flows from probative evidence; rather, it is evidence that ""uniquely tends to evoke an emotional bias against the defendant as an individual *and which has very little effect on the issues*."" (*People v. Gionis* (1995) 9 Cal.4th 1196, 1214.)

12

Defendant focuses her argument regarding undue prejudice on the similarity between the nature of the uncharged offense—possession of methamphetamine—and the charged offenses in this case. Because of the similarity, she argues, there is a "danger" that the jury will view the evidence as showing a criminal propensity. The similarity between the two incidents, however, is a significant reason why the prior act is relevant in this case—i.e., to show that defendant knew the substance was an illegal drug and would hide the drug in her pants to avoid detection. Moreover, the jury was instructed that they could use the evidence for the limited purposes of showing defendant's knowledge of the controlled substance and as evidence of a common plan or scheme. We must assume they followed these instructions. (See *People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

The prosecution's evidence of the 2007 incident was based on the testimony of one witness and was brief—encompassing approximately seven pages of the reporter's transcript. There was no risk of jury confusion. Moreover, the prior act was no more inflammatory than the charged act and no reason to believe the jury would want to punish her for the 2007 incident. In short, the trial court could have reasonably concluded that any prejudice that might have resulted from admission of evidence regarding the 2007 incident did not substantially outweigh the probative value of the evidence. Therefore, the court did not abuse its discretion by allowing it into evidence.

13

4. The Trial Court's Error in Admitting Evidence of the Sausage Incident Was Harmless

Although the trial court erred in admitting evidence of the 2006 sausage incident, the error was harmless. The erroneous admission of evidence under Evidence Code section 1101, subdivision (b) is evaluated under the *Watson*[2] standard for prejudice. (*People v. Malone* (1988) 47 Cal. 3d 1, 22; *People v. Foster* (2010) 50 Cal.4th 1301, 1333.) Under this standard, we will reverse the judgment only if, after an examination of the entire cause, including the evidence, it is reasonably probable that a result more favorable to defendant would have been reached in the absence of the error. (*People v. Watson, supra,* 46 Cal.2d at p. 836; *People v. Scheer, supra,* 68 Cal.App.4th at pp. 1018-1019.)

Here, there is very strong evidence of guilt without regard to the 2006 sausage incident. During a jailhouse security check, deputies found a note indicating defendant could provide "a line" to another inmate. During a strip search, Deputy Barbula could tell something was amiss as soon as she was handed defendant's underwear because it felt heavy and rigid. Upon a search of the attached sanitary pad, the deputy found six pieces of paper, each 8-1/2 inches by 11 inches, folded, along with two baggies of methamphetamine. There was testimony regarding how sanitary pads are distributed by inmates, as well as how one must hold, fold, and touch the pad to secure it in place on underwear. Such handling would almost certainly lead to the discovery of the pad's

---

[2] *People v. Watson* (1956) 46 Cal.2d 818.

14

unusual contents. Finally, defendant's statement to the deputies that "[i]t's nobody's fault but mine," strongly suggests her guilt.

Based on our review of the record, we conclude it is not reasonably probable that there would have been a more favorable outcome for defendant if the evidence of the sausage incident had been excluded. The error in admitting that evidence, therefore, was harmless.

B. *Defendant's Admission of the Strike Prior Allegation*

Defendant argues that her plea as to the strike prior allegation should be vacated for two reasons. First, she argues that she should be permitted to withdraw her plea because it was based on a mistake or misapprehension of the law. Second, she contends her attorney was constitutionally ineffective in advising her to admit the strike allegation. We reject both contentions.

In the information, the district attorney alleged that defendant had been convicted of gross vehicular manslaughter while intoxicated in violation of section 191.5, subdivision (a), a serious and violent felony within the meaning of the Three Strikes law.

Following the jury's verdicts on the substantive counts and before the bifurcated trial on the strike prior allegation, the following colloquy took place:

"THE COURT: Counsel, . . . [y]ou indicated that your client in this matter would be willing to waive her right to a trial and was prepared to admit the allegation of the special prior offense.

"[DEFENSE COUNSEL]: That is correct, your Honor. If I can confirm.

15

"[Defendant], you and I had a discussion wherein I told you that you had two options. One option was to have a—a court trial wherein the prosecution would bring evidence to prove to the Court that you have suffered a prior special conviction.

"Option two would be that you simply admit to the Court that you suffered a prior special allegation.

"Is it correct that you have chosen option No. 2 where you will simply admit to the Court you suffered the prior special allegation?

"THE DEFENDANT: Yes."

Defendant thereafter acknowledged and expressly waived her constitutional rights to a jury trial, to confront witnesses, and to not testify. The court then asked: "Are you prepared then at this time to admit that on or about December 31st, 1998, in the Superior Court of the County of Los Angeles, State of California, you were convicted of the crime of gross vehicular manslaughter, a serious and violent felony, in violation of Penal Code Section 191.5[, subdivision] (a) within the meaning of Penal Code Section[s] 667[,] subdivision[s] (c)[,] (e)(1) and 1170.12[, subdivision] (c)(1)?" She answered, "Yes."

We first consider defendant's argument that her admission of the strike prior allegation was based on a mistake or misapprehension of the law.

1. Legal Impossibility and Mistake of Law

Defendant does not dispute that she had been previously convicted of gross vehicular manslaughter while intoxicated in violation of section 191.5. Under the Three Strikes law, a prior conviction qualifies as a strike if it is listed in section 667.5,

16

subdivision (c) as a "violent felony," or in section 1192.7, subdivision (c) as a "serious felony." (§§ 667, subd. (d)(1), 1170.12, subd. (b)(1).) Gross vehicular manslaughter is not specified as such in either statute. However, both statutes also define serious or violent felonies to include any felony in which the defendant inflicts great bodily injury on a person other than an accomplice. (§§ 667.5, subd. (c)(8), 1192.7, subd. (c)(8).) Thus, the crime of gross vehicular manslaughter while intoxicated will qualify as a serious or violent felony—and a strike—if, in committing the crime, the defendant inflicted great bodily injury on a person who was not an accomplice. (See *People v. Gonzales* (1994) 29 Cal.App.4th 1684, 1694.)

Stated differently, if the only persons who suffered great bodily injury as a result of defendant's crime was an accomplice to the crime, the conviction for that crime does not constitute a serious and violent felony for purposes of the Three Strikes law. If, for example, the only victim of defendant's vehicular manslaughter was a passenger in defendant's vehicle who aided and abetted defendant's intoxication and encouraged her to drive, the victim could, at least arguably, be an accomplice to defendant's crime. (See *People v. Henley* (1999) 72 Cal.App.4th 555, 561-562 [motorcycle passenger may have been an accomplice to motorcyclist's crime of evading police officer].)

In this case, the district attorney alleged that defendant had been convicted of the crime of gross vehicular manslaughter, "a serious and violent felony . . . ." The district attorney did not specifically allege the required qualification that, in the commission of

17

the crime, defendant inflicted great bodily injury on a person who was not an accomplice. Defendant admitted the allegation without seeking clarification of the allegation.

An analogous situation was presented in *People v. Thomas* (1986) 41 Cal.3d 837. In that case, the information alleged that the defendant had been previously "'convicted of a serious felony, to wit:  Burglary . . . within the meaning of sections 667 and 1192.7 . . . .'" (*Id.* at p. 841.)  The defendant admitted the allegation. (*Id.* at pp. 841-842.) However, not all burglaries qualified as serious felonies.  At that time, burglary was a serious felony only if it was a burglary of a residence, the defendant inflicted great bodily injury on any person other than an accomplice, the defendant used a firearm, or the defendant used a deadly weapon. (*Id.* at pp. 840, 843.)  Instead of alleging merely the conviction of a burglary as a serious felony, the court noted that the "better practice" would be to allege the specific basis that made the burglary a serious felony. (*Id.* at p. 843.)  The defendant could have demurred to the pleading for uncertainty on that basis but, failing to do so, waived the defect. (*Ibid.*)

The *Thomas* court continued:  "It is not the function of the information to state the elements of an offense or enhancement. [Citations.]  It is, instead, the role of counsel to explain to his client the essentials of the charge.  We recognize that in an occasional case counsel may fail to do so, and a defendant may plead guilty or admit an enhancement without having been informed of some critical matter, but that claim is best asserted by a petition for a writ of habeas corpus." (*People v. Thomas, supra,* 41 Cal.3d at pp. 843-844.)

18

On the record before it, the *Thomas* court applied the rule that a "plea of guilty admits every element of the crime charged," and stated that "this is no different from any other case in which counsel explains to his client the basis of the charges, and the client, in admitting the charges, knowingly admits each of the elements of that charge." (*People v. Thomas, supra,* 41 Cal.3d at p. 844 & fn. 6.) The court concluded that the defendant's admission that he had been previously convicted of burglary and that such burglary was a serious felony within the meaning of the enhancement statutes was sufficient to establish that allegation. (*Id.* at p. 845.) As our state Supreme Court explained more recently: "*Thomas* establishes that a defendant's admission of an alleged enhancement is valid even if it does not include specific admissions of every factual element required to establish the enhancement." (*People v. French* (2008) 43 Cal.4th 36, 50.)

As suggested by *Thomas*, the "better practice" in this case may have been to allege that the defendant had been convicted of gross vehicular manslaughter and, in the commission of such crime, the defendant inflicted great bodily injury upon a person not an accomplice to the crime, a serious and violent felony within the meaning of the Three Strikes law. If the allegation was subject to demurrer for uncertainty, however, the defect was waived. (See *People v. Thomas, supra,* 41 Cal.3d at p. 843.) By admitting the allegation, the defendant admitted each element of the enhancement, including that the prior crime was a serious felony for purposes of the Three Strikes law. (See *id.* at p. 845; see also *People v. Bowie* (1992) 11 Cal.App.4th 1263, 1266 ["defendant's guilty plea or

19

admission of a sentence enhancement allegation is deemed to constitute a judicial admission of every element of the offense charged . . . ."].)

Defendant contends we should apply a different rule—that a defendant is entitled to withdraw a guilty plea when it was legally impossible he or she committed the crime. (See, e.g., *People v. Soriano* (1992) 4 Cal.App.4th 781, 784.)  In *Soriano*, for example, the defendant pleaded guilty to violating section 115 by attempting "to file a 'forged instrument, to wit, a death certificate.'"  (*People v. Soriano, supra,* at p. 783.)  However, a death certificate is not an "instrument" within the meaning of section 115.  (*People v. Soriano, supra,* at p. 783.)  The Court of Appeal reversed the judgment, explaining: "[W]hat we have here is a legal impossibility.  [The defendant] could not have been guilty of violating . . . section 115 by attempting to file a forged instrument because, as a matter of law, the writing he was charged with and admitted forging, a death certificate, is not an instrument within the meaning of section 115."  (*Id.* at p. 784.)

Similarly, if a defendant admits a sentence enhancement allegation that a prior crime was a violent felony when, as a matter of law, the crime was not a violent felony, the additional punishment cannot stand.  (*People v. Ibarra* (1982) 134 Cal.App.3d 413, 425.)  In *Ibarra*, the defendant admitted a sentence enhancement allegation that he had a prior violent felony conviction for purposes of section 667.5, subdivision (a).  (*People v. Ibarra, supra,* at p. 416.)  The prior conviction was for attempted murder.  (*Id.* at p. 424.)  At that time, the crime of attempted murder was not a violent felony under section 667.5, subdivision (a).  (*People v. Ibarra, supra,* at p. 425.)  In reversing the finding on the prior

20

conviction, the Court of Appeal stated: "Just as the law grants relief to one who pleads guilty where the statute under which he is convicted did not prohibit his conduct [citations], so also must the law grant relief where there is an admission to an additional punishment provision which is inapplicable to the admitted facts [citation]. In such a case there is no legal basis for imposing the additional punishment." (*Ibid.*)

Defendant contends that the rule in *Ibarra* applies here because she admitted the strike prior allegation based upon her mistake or misapprehension that her prior crime constituted a strike. The argument fails because, as explained above, the crime of vehicular manslaughter *can* constitute a strike. Unlike the attempted murder conviction in *Ibarra*, it is not legally impossible that her prior conviction was for a serious or violent felony. *Ibarra* does not apply in this situation.

Defendant also relies on *In re Crumpton* (1973) 9 Cal.3d 463. That case is also distinguishable. In *Crumpton*, the defendant pleaded guilty to the crime of kidnapping for the purpose of robbery in violation of section 209. (*In re Crumpton, supra,* at p. 465.) Our state Supreme Court held that the defendant's plea was defective not because of the allegations of the pleading, but because of facts adduced at the defendant's preliminary hearing. The court explained: "Once it is established on the basis of the preliminary hearing testimony that no reasonable jury could have convicted [the defendant] of kidnap[p]ing had he gone to trial, it follows that he should not be condemned to life imprisonment simply because he pleaded guilty under a mistaken legal understanding of the kidnap[p]ing statute." (*Id.* at p. 468.)

21

*Crumpton* would be applicable if, in the present case, the facts regarding the underlying vehicular manslaughter conviction were sufficiently established such that no reasonable jury could have found that the victim of defendant's vehicular manslaughter was not an accomplice. Here, however, no facts on the issue were ever adduced. Defendant states that the prosecution provided a copy of defendant's section 969, subdivision (b) packet regarding the prior conviction, and that the packet does not show the victim was not an accomplice. The prosecution was not, however, limited to that packet to prove the allegation. Defendant's suggestion that the prosecution would produce no other evidence in support of the allegation is pure speculation.

Defendant asserts that the victim of her vehicular manslaughter was a passenger in her vehicle who, like defendant, had been drinking alcohol, and might have been an accomplice to her crime. She refers us to the unsworn statements by her attorney in her written *Romero* motion and to statements in a probation report. In her *Romero* motion, counsel represented that defendant "was the driver of a truck in which her best friend, both of whom had been drinking alcohol, was a passenger, [defendant] lost control of the vehicle, resulting in a crash in which her best friend was killed." The probation report states: "[Defendant] report[s] she lost control of her vehicle while under the influence of alcohol. The vehicle plummeted down a cliff, killing her passenger, a close friend." These statements were never introduced as evidence on the issue of whether or not her victim was an accomplice and do not come close to establishing that no reasonable jury could find such fact, as *Crumpton* requires.

22

For all the foregoing reasons, we reject defendant's legal impossibility and mistake of law arguments.

2. Ineffective Assistance of Counsel

In the alternative, defendant argues that the plea should be overturned because she was denied the effective assistance of counsel. She contends she entered her plea as to the strike prior allegation based on a mistaken understanding that the prior conviction constituted a serious or violent felony under the Three Strikes law. She suggests that this mistake was the result of acts or omissions of her trial attorney, and that but for the ineffective assistance of her counsel, she would not have admitted the strike prior allegation. We conclude that, based on our record, defendant has failed to satisfy her burden of establishing ineffective assistance.

The two-part test announced in *Strickland v. Washington* (1984) 466 U.S. 668 applies to challenges to guilty pleas based on ineffective assistance of counsel (*Hill v. Lockhart* (1985) 474 U.S. 52, 58). Under *Strickland*, the defendant has the burden of establishing: (1) counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance resulted in prejudice. (*Strickland v. Washington, supra,* at pp. 687-688.)

To prove that counsel's performance was deficient, defendant must affirmatively show counsel's deficiency involved a crucial issue which cannot be explained on the basis of any knowledgeable choice of tactics. (*People v. Floyd* (1970) 1 Cal.3d 694, 709, disapproved on another point in *People v. Wheeler* (1978) 22 Cal.3d 258, 287, fn. 36.)

23

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington, supra,* 466 U.S. at p. 694.) The defendant "must carry his burden of proving prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel." (*People v. Williams* (1988) 44 Cal.3d 883, 937.)

When the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, the judgment will be affirmed unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation. (*People* v. *Ledesma* (1987) 43 Cal.3d 171, 218.) The record does not indicate that defense counsel was ever asked for an explanation as to any act or omission.

Defendant asserts there could be no satisfactory explanation for her counsel's acts or omissions. Initially, we note that defendant fails to specify what counsel did or did not do to perform deficiently. She asserts that counsel was somehow deficient in advising her with respect to her decision to admit the strike prior allegation. However, she does not cite to any point in the record that indicates what advice, if any, she was given as to the issues regarding the allegation. We are told only that defendant and her counsel had a discussion in which they discussed going to trial on the allegation or admitting the allegation. Based on our record, it is entirely possible that defendant's counsel fully and competently advised defendant regarding all issues pertaining to a trial on the allegation

24

(including issues arising from the prosecution's burden of proving that she inflicted great bodily injury on someone who was not an accomplice), counseled her to go to trial on the matter, and defendant simply decided to admit the allegation. A defendant may, of course, admit an enhancement for a variety of reasons, including the defendant's belief it would be futile to dispute the allegation, "or simply because [s]he honestly knows the allegation[] to be true." (*People v. Thomas, supra,* 41 Cal.3d at p. 844.) In short, because the record does not disclose the nature of counsel's advice to defendant, we have no basis for concluding the advice was deficient.

Even if defendant met the first *Strickland* prong of establishing counsel's deficient performance, she has made no showing that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. (See *Strickland v. Washington, supra,* 466 U.S. at p. 694.)

We therefore reject defendant's ineffective assistance argument.

C. *Trial Court's Denial of Defendant's Romero Motion*

Prior to sentencing, defendant filed her *Romero* motion. At the hearing, the trial court stated it "does not find that the defendant is someone that is outside the intended scope of Three Strikes and doesn't find any factors here which would go towards striking a strike in the interest of justice." Defendant contends the court's ruling is an abuse of its discretion. We disagree.

The "Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders." (*Romero,*

25

*supra,* 13 Cal.4th at p. 528.)  The trial court's discretion to strike a qualifying strike is therefore guided by "established stringent standards" designed to preserve the legislative intent behind the Three Strikes law.  (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)  "[T]he court . . . must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."  (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

A court's refusal to dismiss or strike a prior conviction allegation is reviewed for an abuse of discretion.  (*People v. Carmony, supra,* 33 Cal.4th at p. 374.)  "In reviewing for abuse of discretion, we are guided by two fundamental precepts.  First, '"[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.'"  [Citations.]  Second, a '"decision will not be reversed merely because reasonable people might disagree.  'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"'"  (*Id.* at pp. 376-377.)

Here, the record reveals that defendant was convicted of gross vehicular manslaughter while intoxicated in 1998, when she was 25 years old.  She was paroled in

2001, and violated that parole the following year. Between December 2006 and July 2010, she was convicted of numerous counts involving transporting and possessing drugs for sale and receiving stolen property. In April 2011, just prior to her arrest in this case, she was convicted of theft, burglary, receiving stolen property, and possession of drugs.

This record of criminal convictions reveals that defendant "'had been taught, through the application of formal sanction, that [such] criminal conduct was unacceptable—but had failed or refused to learn [her] lesson.' [Citation.]" (*People v. Williams, supra,* 17 Cal.4th at p. 163.) This failure is evident in defendant's comments to the probation officer in this case that drugs "were available so I got them. . . . I wasn't thinking about consequences." She added that she was uncertain whether she would re-offend if she was offered drugs while incarcerated.

The probation officer reported that defendant "has spent a significant portion of her life on probation, parole, in jail, or in prison for unlawful behavior and should have been well-versed in both institutional policies and consequences. Despite this, she ignored the law and continued in her criminal activities, committing an unlawful act even while serving time in jail pending sentencing on separate matters. . . . Furthermore, the defendant expressed no penitence or interest in living a sober and lawful life, leading this officer to believe she has no intention of discontinuing her self[-]destructive habits which threaten not only her own well being, but the well being of others." The probation officer added: "The defendant appears to be a habitual criminal addicted to controlled substances. It appears her extensive criminal history has not only included drug-related

27

crimes, but several theft-related charges. When considering the defendant's prior criminal record, the nature of the instant matter, and admissions of drug and alcohol addiction, it appears she has no intentions of living a law abiding life while incarcerated or in the community. If allowed into the community, it is believed the defendant will commit more criminal acts and continue to abuse controlled substances."

In light of defendant's lengthy criminal record and the probation officer's report, the trial court did not abuse its discretion by refusing to strike the prior serious felony conviction allegation.

## IV.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING
J.

We concur:

RICHLI
Acting P. J.

MILLER
J.