Filed 7/31/14  P. v. O'Rourke CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D065466 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FMB1100428) |
| MANUEL ROBERT O'ROURKE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Rodney A. Cortez, Judge.  Affirmed as modified.

John E. Edwards, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steven T. Oetting and Lise S. Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Manuel Robert O'Rourke guilty of assault with a deadly weapon against his former girlfriend, Mia Mahoney.  He appeals, contending the trial court erred

in (1) admitting Mahoney's prior misdemeanor vandalism conviction without allowing him to introduce evidence regarding the details of that crime, (2) failing to modify CALCRIM No. 226 to instruct the jury that it could consider Mahoney's misdemeanor conviction in assessing her credibility and excluding an optional portion of that instruction regarding a witness's character for truthfulness, (3) failing to appropriately respond to a jury question regarding whether fists could be considered deadly weapons, (4) failing to provide the jury with a unanimity instruction, (5) excluding evidence that Mahoney allegedly had a reputation for lying, violence and self-inflicting injuries, and (6) miscalculating his presentence conduct credits. The Attorney General contends O'Rourke was awarded one more conduct credit than he was entitled. We agree with the Attorney General and modify the judgment accordingly. In all other respects, the judgment is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

O'Rourke does not challenge the sufficiency of the evidence to support his conviction; accordingly, we briefly summarize the facts presented at trial as background for our discussion of his contentions on appeal.

O'Rourke and Mahoney dated on and off since 2005. At one point while they were living together, O'Rourke assaulted Mahoney, hitting her repeatedly with a slipper and holding a piece of broken glass to her throat. O'Rourke was convicted of domestic violence. Mahoney moved out of the home she shared with O'Rourke but later reconciled with him.

2

In August 2011, Mahoney went to O'Rourke's house to collect money he owed her friends and to talk to him because he had not returned her calls. The gate to the property was locked so Mahoney climbed over a chain-link fence and proceeded to a trailer at the rear of the property. When Mahoney knocked on the trailer door, Karen Komorowski answered. Komorowski informed Mahoney that O'Rourke had helped her move and she was tired so she came to the trailer to sleep. Komorowski indicated that O'Rourke was in the front house on the property and she called for him to come to the trailer.

When O'Rourke arrived at the trailer, he saw Mahoney and immediately asked her to leave. Mahoney did not leave and became upset. O'Rourke told Mahoney their relationship was over and started walking her to the gate. After Mahoney exited the gate and started walking along the side of the property, O'Rourke grabbed her hair, pulled her to the ground, and whispered, "You're not going anywhere." O'Rourke then put Mahoney's head between his knees and twice dragged the tip of a knife across her forehead while he said something like, "I could kill you right now" or "I could cut your face up right now." Mahoney escaped O'Rourke's grip and pushed herself backwards on the ground toward the street.

O'Rourke continued swinging the knife at Mahoney as she tried to defend herself by kicking at him. At one point, O'Rourke grabbed Mahoney's leg and cut it with the knife. Mahoney tried to run, but O'Rourke grabbed her by the hair and threw her to the ground again. He then used his fists and feet to hit and punch Mahoney in the head, back and shoulders for approximately two minutes, causing her to lose consciousness.

3

Around the same time, a neighbor heard a loud male voice say, "Get out of here. Leave or I'm going to kill you," and the name "Mia." She also heard a female trying to calm someone down. The neighbor called 911 to report what she heard.

When Mahoney awoke, she went to a friend's nearby home. The friend heard someone screaming outside, opened his door and found Mahoney hysterical and in tears with blood on her face and one leg. Mahoney said that someone stabbed her and that she feared for her life. Mahoney called 911 and told the operator that someone beat her up.

Mahoney suffered an inch long laceration on her left leg, which was consistent with a knife wound and required seven stitches. Mahoney also had a fractured thumb, sprained shoulder, and linear abrasions on the top of her face, which were consistent with someone dragging a knife over her forehead.

DISCUSSION

I. *Prior Conviction Evidence*

A. Background

During direct examination, Mahoney testified that she pleaded guilty to one count of misdemeanor vandalism in December 2011 and a second count was dismissed. During cross-examination, defense counsel sought to elicit testimony from Mahoney regarding the details of the vandalism incident, which the prosecutor conceded was a crime of moral turpitude. Specifically, defense counsel wanted to introduce facts that Mahoney ran into her husband's fence with her car and when transported in a patrol car, she bashed her head against the window until it damaged the patrol car window. Defense counsel indicated that these facts were relevant to O'Rourke's defense because Mahoney self

4

inflicted her injuries by bashing her head on concrete while she was crawling to the neighbor's house. The court sustained the prosecutor's objection because the underlying facts of the vandalism conviction were not relevant.

B.  Analysis

O'Rourke argues the trial court erred by admitting Mahoney's prior misdemeanor vandalism conviction without allowing him to introduce evidence regarding the details of that crime. Specifically, O'Rourke contends that exclusion of the details of the vandalism incident in combination with admission of evidence concerning O'Rourke's prior domestic violence conviction gave the jury a false impression of the dynamic between O'Rourke and Mahoney. He also contends that exclusion of the evidence violated his rights under the Confrontation Clause of the United States Constitution. We reject these arguments.

A witness may be impeached with evidence of prior conduct involving moral turpitude even though the conduct did not result in a felony conviction. (*People v. Wheeler* (1992) 4 Cal.4th 284, 295-296 (*Wheeler*); accord *People v. Clark* (2011) 52 Cal.4th 856, 932 (*Clark*).) But admission of such evidence is subject to a trial court's discretion under Evidence Code section 352, which "empowers courts to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues." (*Wheeler*, at p. 296; accord *People v. Lightsey* (2012) 54 Cal.4th 668, 714 (*Lightsey*).)

A "trial court has discretion to exclude impeachment evidence . . . if it is collateral, cumulative, confusing, or misleading." (*People v. Price* (1991) 1 Cal.4th 324, 412.) On

appeal, a ruling excluding impeachment evidence under Evidence Code section 352 is reviewed under the deferential abuse of discretion standard, under which the ruling will not be disturbed unless the record shows the trial court acted in an arbitrary, capricious, or patently absurd manner that caused a manifest miscarriage of justice. (*People v. Lewis* (2001) 26 Cal.4th 334, 374; *People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.) "Because the court's discretion to admit or exclude impeachment evidence 'is as broad as necessary to deal with the great variety of factual situations in which the issue arises' [citation], a reviewing court ordinarily will uphold the trial court's exercise of discretion [citations]." (*Clark*, *supra*, 52 Cal.4th at p. 932.)

Here, the parties represented to the court that Mahoney's vandalism conviction was a crime involving moral turpitude. Assuming without deciding that it was a crime of moral turpitude, admission of such evidence was subject to the trial court's discretion under Evidence Code section 352. (*Wheeler*, *supra*, 4 Cal.4th at p. 296.) "Although the record must 'affirmatively show that the trial court weighed prejudice against probative value' [citations], the necessary showing can be inferred from the record despite the absence of an express statement by the trial court." (*People v. Prince* (2007) 40 Cal.4th 1179, 1237.) Considering the record as a whole, we can infer that the court engaged in the proper balancing when it excluded the details of Mahoney's vandalism conviction. The record indicates that the court considered the anticipated testimony as collateral to the matters at hand and as such more prejudicial than probative.

We cannot say the trial court's decision to exclude the underlying facts of Mahoney's vandalism conviction was a plain and manifest abuse of discretion, exceeding

6

all bounds of reason. (*People v. Watson* (2008) 43 Cal.4th 652, 684; *In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1385.) The details of Mahoney's misdemeanor conduct would "not strongly demonstrate moral turpitude, i.e., a '"general readiness to do evil"' [citation], and thus would not have provided the jury much assistance in assessing [her] credibility." (*Lightsey*, *supra*, 54 Cal.4th at p. 714; see also *Wheeler*, *supra*, 4 Cal.4th at p. 296 [misdemeanor "is a less forceful indicator of immoral character or dishonesty than is a felony"].) Moreover, introduction of such evidence might have required "a trial within a trial" and diverted the jury's attention away from the main issue of O'Rourke's guilt.

Similarly, exclusion of the proffered evidence did not violate the Confrontation Clause of the United States Constitution. (U.S. Const., 6th Amend.) "Although the right of confrontation includes the right to cross-examine adverse witnesses on matters reflecting on their credibility, 'trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination.' [Citation.] . . . A trial court's limitation on cross-examination pertaining to the credibility of a witness does not violate the confrontation clause unless a reasonable jury might have received a significantly different impression of the witness's credibility had the excluded cross-examination been permitted. [Citations.]" (*People v. Quartermain* (1997) 16 Cal.4th 600, 623-624.)

In this case, the jury heard other evidence that reflected poorly on Mahoney's character and undermined her credibility. Specifically, the jury heard testimony that Mahoney became jealous and angry after looking at text messages on her husband's cell

phone and then threw the phone. Later that day or early the next morning, Mahoney pounded on her husband's door and yelled at him, but he would not let her in. At some point during the incident, Mahoney ran into a fence at her husband's house. Additionally, Komorowski testified that Mahoney woke her up by banging on the trailer door, yelling expletives and pulling her by the arm from a hole in the trailer door. A long time acquaintance also testified that Mahoney attempted to persuade her to lie to the district attorney. In light of this evidence, details of Mahoney's vandalism conviction likely would not have given the jury a significantly different impression of her or her relationship with O'Rourke. Further, based on the other evidence in the record undermining Mahoney's credibility, we conclude that excluding details of the vandalism did not give her a false aura of veracity.

In any event, any error in excluding evidence of Mahoney's vandalism conviction was harmless. The exclusion of cumulative evidence concerning a witness's credibility is not prejudicial. (*People v. Farley* (2009) 46 Cal.4th 1053, 1105; *People v. Hendrix* (1923) 192 Cal. 441, 450.) As we have already discussed, there was other evidence in the record negatively impacting Mahoney's credibility, including that she became jealous and angry with her husband and ran into his fence. Accordingly, some of the details of the vandalism conviction were cumulative and exclusion of that evidence was not prejudicial. Further, O'Rourke has not shown that cross-examining Mahoney about her vandalism conviction "'would have produced "a significantly different impression of [her] credibility."'" (*People v. Farley*, at p. 1105.)

8

## II. *CALCRIM No. 226*

O'Rourke argues the trial court erred by failing to instruct the jury that it could consider Mahoney's misdemeanor conviction in assessing her credibility and excluding an optional portion of CALCRIM No. 226 regarding a witness's character for truthfulness. We disagree.

We review a claim of instructional error de novo. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) "Review of the adequacy of instructions is based on whether the trial court 'fully and fairly instructed on the applicable law.' [Citation.]" (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.) In determining whether error has been committed in giving jury instructions, we consider the instructions as a whole and assume jurors are intelligent persons, capable of understanding and correlating all jury instructions which are given. (*Ibid.*) " 'Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.' [Citation.]" (*Ibid.*) Generally, a defendant who believes that an instruction is erroneous or requires clarification must request modification or clarification of the instruction to avoid forfeiting the issue on appeal. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1140.)

Here, the trial court instructed the jury with CALCRIM No. 226 regarding the credibility or believability of witnesses. This instruction provided that "[i]n evaluating a witness's testimony, [the jury] may consider anything that reasonably tends to prove or disprove the truth or accuracy of that testimony[,]" including whether the witness has been convicted of a felony or "engaged in other conduct that reflects on his or her believability."

9

O'Rourke contends the trial court should have modified CALCRIM No. 226 to instruct the jury that it could consider Mahoney's misdemeanor conviction in assessing her credibility as a witness.  O'Rourke did not request this modification in the trial court. "A trial court has no sua sponte duty to revise or improve upon an accurate statement of law without a request from counsel [citation], and failure to request clarification of an otherwise correct instruction forfeits the claim of error for purposes of appeal."  (*People v. Lee* (2011) 51 Cal.4th 620, 638.)  If O'Rourke believed the court should have included language concerning the use of misdemeanor convictions, he was obliged to request it below.  (*Ibid.*)

O'Rourke also contends the trial court should have included an optional portion of CALCRIM No. 226 which informed the jury that a factor it could consider in evaluating a witness's testimony was the witness's character for truthfulness.  The trial court declined to include this language on the basis there was no character evidence presented at trial. As we discussed below, O'Rourke's proffered character evidence was not relevant to the issues in this case.  (*Post*, Part V.)  Accordingly, the trial court properly excluded it and there was no need to include the optional paragraph in CALCRIM No. 226 regarding the witness's character for truthfulness.

### III.  *Response to Jury Question*

A.  Background

The court instructed the jury with CALCRIM No. 875.  This instruction informed the jury that O'Rourke was charged with two counts of assault with a deadly weapon other than a firearm.  The instruction also stated, "A deadly weapon is any object,

instrument, or weapon that is inherently deadly or dangerous or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury."

During deliberations, the jury asked, "Is the fist a deadly weapon?" The court advised the parties it would respond by stating this was a jury determination. The prosecutor suggested referring the jury to the instruction regarding a deadly weapon. The court agreed to refer the jury to CALCRIM No. 875 and to inform them that it was a jury determination. When the court inquired as to whether defense counsel wished to be heard regarding the response to the jury's question, defense counsel stated that he did not.

B.  Analysis

O'Rourke contends the trial court failed to appropriately respond to the jury's question because the law is clear that fists are not deadly weapons within the meaning of Penal Code section 245. (Undesignated statutory references are to this code.) The Attorney General agrees that fists may not be considered deadly weapons, but argues any error was harmless. We agree with the Attorney General.

Section 1138, "'imposes upon the court a duty to provide the jury with information the jury desires on points of law.'" (*People v. Eid* (2010) 187 Cal.App.4th 859, 881-882.) "The court's failure under section 1138 to adequately answer the jury's question 'is subject to the prejudice standard of [citation],' i.e., whether the error resulted in a reasonable probability of a less favorable outcome. [Citation.] In this context, 'reasonable probability' means '"merely a *reasonable chance*, more than an *abstract possibility*," of an effect of this kind.' [Citation.]" (*Id.* at p. 882.)

11

Based on our review of the record, we conclude it is not reasonably probable that O'Rourke would have received a more favorable outcome had the court informed the jury that fists are not deadly weapons. The court properly instructed the jury with CALCRIM No. 875, which defined a "deadly weapon" as "any object, instrument, or weapon that is inherently deadly or dangerous or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury." Fists are not ordinarily understood to constitute "object[s], instrument[s], or weapon[s]" (CALCRIM No. 875). Thus, it is unlikely that after the jury examined CALCRIM No. 875, it concluded a fist is a deadly weapon.

Moreover, the prosecutor never argued that O'Rourke was guilty of the crimes charged as a result of using his fists to inflict injuries on Mahoney. Instead, during closing argument, the prosecutor made clear that the deadly weapon for both counts in this case was a knife. As to count 1 for the injury to Mahoney's leg, the prosecutor stated, "[O'Rourke] acted with a deadly weapon. We know, because [Mahoney] testified, that [O'Rourke] had the knife." Similarly, in regard to count 2 for the abrasions on Mahoney's forehead, the prosecutor stated, "[O'Rourke] acted with a deadly weapon. It's a deadly weapon. It is a knife." We find no indication in the record that either party suggested that O'Rourke could be guilty of the crimes charged due to the use of his fists.

Lastly, the jury only found O'Rourke guilty on count 1, which the prosecutor made clear pertained to the injury on Mahoney's leg. The jury heard testimony that Mahoney suffered a laceration on her left leg, which was consistent with a knife wound and

12

required seven stitches. We find no evidence in the record that Mahoney's leg was injured by the use of fists or any other means.

Based on the foregoing, we conclude the alleged error in failing to inform the jury that fists are not deadly weapons for the purposes of the crimes charged was harmless.

IV. *Unanimity Instruction*

O'Rourke argues the trial court erred by failing to provide the jury with a unanimity instruction. Specifically, he contends the instruction was required because some jurors may have convicted him based on an assault with his fists while others may have convicted him based on use of a knife. We reject this argument.

A defendant's constitutional right to a unanimous jury verdict requires that when the evidence shows more than one unlawful act that could support a single charged offense, the prosecution must either elect which act to rely upon or the trial court must sua sponte give a unanimity instruction telling the jurors they must unanimously agree which act constituted the crime. (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1534.) The unanimity instruction is designed to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agreed the defendant committed. (*Ibid*.) No unanimity instruction is required, however, when the offense involves a continuous course of conduct; i.e., when the acts are "substantially identical in nature, so that any juror believing one act took place would inexorably believe all acts took place." (*People v. Champion* (1995) 9 Cal.4th 879, 932, internal quotations omitted.)

13

Here, the court was not required to give a unanimity instruction. O'Rourke was charged with two counts of assault with a deadly weapon. The jury heard evidence that O'Rourke twice dragged the tip of a knife across Mahoney's forehead and later cut her leg with the knife. The prosecutor made clear that the deadly weapon in both counts was a knife. The prosecutor also specifically stated that count 1 pertained to O'Rourke's use of a knife on Mahoney's leg, and count 2 pertained to his use of a knife on Mahoney's forehead. There was no evidence in the record that the crimes charged were committed by other unlawful means. Accordingly, the trial court properly did not give a unanimity instruction.

### V. *Exclusion of Victim Character Evidence*

O'Rourke argues the trial court erred by excluding evidence that Mahoney allegedly had a reputation for lying, violence and self-inflicting injuries. Specifically, he contends the trial court's exclusion of the evidence prevented him from presenting his defense that Mahoney's injuries were self-inflicted or sustained during O'Rourke's reasonable efforts to eject her from his property.

In a criminal case, a defendant may introduce evidence of the character or a trait of character of a victim, in the form of opinion, reputation, or specific instances of conduct, to prove conduct of the victim in conformity with the character or trait of character. (Evid. Code, § 1103, subd. (a)(1).) Thus, a defendant being prosecuted for a violent offense who asserts self-defense may introduce evidence of specific violent acts by the victim on a third person to show that the victim has a violent character and was the aggressor in the current offense. (*People v. Wright* (1985) 39 Cal.3d 576, 587 (*Wright*);

14

*People v. Tackett* (2006) 144 Cal.App.4th 445, 453-454; *People v. Shoemaker* (1982) 135 Cal.App.3d 442, 446 (*Shoemaker*).)

"The admission of such character evidence, however, is not without bounds, but is subject to the dictates of Evidence Code section 352." (*Wright*, *supra*, 39 Cal.3d at p. 587.) That section permits a trial court to exclude relevant evidence if its probative value is substantially outweighed by the probability that its admission will create a substantial danger of undue prejudice. (Evid. Code, § 352.) We review trial court rulings under Evidence Code section 352 using the deferential abuse of discretion standard. (*People v. Pollock* (2004) 32 Cal.4th 1153, 1171.) "Under this standard, a trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Guerra* (2006) 37 Cal.4th 1067, 1113.) As we shall explain, the trial court did not abuse its discretion here.

In his argument, O'Rourke does not specifically identify the particular evidence he claims was wrongly excluded. It appears, however, that he complains regarding the trial court's exclusion of evidence that Mahoney twice abused her daughter, lied to deputies investigating an allegation of substance abuse, self inflicted injuries by beating her head against a patrol car window, engaged in vandalism due to jealousy, had a tendency to exaggerate, attempted to buy Vicodin from a friend, and lied about her ability to obtain Vicodin from her doctor.

In this case, there was no evidence that Mahoney self inflicted her injuries on the occasion in question or that O'Rourke acted in self-defense. In fact, O'Rourke

15

specifically informed the court that he was not asserting self-defense. Further, the proffered evidence that Mahoney abused her daughter, lied to deputies on an unrelated issue, engaged in vandalism, previously lied and exaggerated, and attempted to buy Vicodin from a friend was not admissible as it was not relevant to whether O'Rourke committed assault with a deadly weapon. In order for the evidence to be admissible, it had to be relevant and offered for the purpose of proving conduct in "conformity with the character or trait of character." (Evid. Code, § 1103, subd. (a)(1).) The proffered evidence had no tendency to prove that either Mahoney self inflicted her injuries or that the injuries were sustained through O'Rourke's efforts to defend himself.

Similarly, evidence that Mahoney self inflicted an injury in the past was not relevant because there was no evidence that the injuries in this case were self-inflicted. The proffered evidence was likely to confuse the issues and mislead the jury by leading to speculative inferences. Evidence that leads only to speculative inferences is irrelevant. (*People v. Stitely* (2005) 35 Cal.4th 514, 549.) "[E]xclusion of evidence that produces only speculative inferences is not an abuse of discretion." (*People v. Babbitt* (1988) 45 Cal.3d 660, 684.)

Finally, we reject O'Rourke's contention that the trial court's exclusion of testimony concerning Mahoney's alleged reputation for lying, violence and self inflicting injuries denied him the ability to present his defense. We, of course, agree that O'Rourke has a due process right to present evidence material to his defense, so long as the evidence is of significant probative value. (*Shoemaker*, *supra*, 135 Cal.App.3d at p. 450.) But he "has no constitutional right 'to present all relevant evidence in his favor, no matter

16

how limited in probative value such evidence will be so as to preclude the trial court from using Evidence Code section 352.'" (*Shoemaker*, at p. 450.) Indeed, our Supreme Court has held that a trial court's "application of ordinary rules of evidence—including the rule stated in Evidence Code section 352—generally does not infringe upon this right [to present a defense]." (*People v. Cornwell* (2005) 37 Cal.4th 50, 82.) Accordingly, because the proffered evidence had at best very little probative value but significant potential to mislead the jury and confuse the issues, the trial court's exclusion of the evidence did not violate O'Rourke's right to present his defense.

## VI. *Presentence Conduct Credits*

O'Rourke committed the instant crime in August 2011. He was sentenced in June 2012. O'Rourke was awarded 453 days of credit for time served, consisting of 302 actual custody days and 151 conduct credits.

O'Rourke contends the trial court miscalculated his presentence conduct credits. Specifically, he contends the trial court should have calculated his conduct credits at two different rates because he served time both before and after an October 2011, amendment to section 4019, subdivision (h) became effective. Based on O'Rourke's calculation, he should have received 275 days of conduct credit rather than 151 days. The Attorney General contends the trial court erred by awarding O'Rourke one more day than he was entitled.

Under section 4019, defendants are entitled to earn credit towards their sentences by performing additional labor (§ 4019, subd. (b)) and for good behavior (§ 4019, subd.

17

(c)).  These credits are referred to as conduct credits.  (*People v. Duff* (2010) 50 Cal.4th 787, 793.)

The Legislature has repeatedly amended section 4019 regarding the proper calculation of conduct credits.  When O'Rourke committed his offense in August 2011, individuals who had been convicted of a serious or violent felony were entitled to two days of conduct credits for every four days actually served.  (See former § 4019, subd. (f), amended by Stats. 2010, ch. 426, § 2, effective Sept. 28, 2010; former § 2933, subd. (3)(1), amended by Stats. 2010, ch. 425, § 1; see *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48-49 (*Rajanayagam*).)  However, when O'Rourke was in local custody awaiting sentencing, the Legislature amended section 4019 as part of the Realignment Act and amended former section 2933.  The amendments, which became operative on October 1, 2011, eliminated the prior felony strike disqualification and increased the amount of conduct credits earned by prisoners in local custody to one day of conduct credit for each day spent in actual custody.  (§ 4019, subds. (b), (c), (f), amended by Stats. 2011, ch. 39, § 53; see also Stats. 2011, 1st Ex. Sess. 2011-2012, ch. 12X, § 35.)

In awarding O'Rourke 151 conduct credits, the trial court applied the former version of section 4019 in effect at the time O'Rourke *committed* his crime.  O'Rourke contends the applicable conduct credits he accrued after the amendment's operative date (October 1, 2011) should have been calculated using the more generous amended rate. He argues the reduced conduct credit award for his time served after October 1, 2011 violates section 4019 and his equal protection rights.

18

With respect to the October 1, 2011 amendment, section 4019, subdivision (h) states, "The changes to this section enacted by the act that added this subdivision *shall apply prospectively and shall apply to prisoners who are confined* to a county jail, city jail, industrial farm, or road camp *for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law." (Italics added.)

O'Rourke was confined for a crime committed in August 2011, which is before October 1, 2011. Thus, the amended statute's new credit calculation rate is expressly inapplicable to him.

Although recognizing that the first sentence of section 4019, subdivision (h) states that the amendment "shall apply prospectively" and "shall apply to prisoners who are confined . . . for a crime committed on or after October 1, 2011," O'Rourke nonetheless contends he is entitled to take advantage of the amendment for local time served after October 1, 2011, because the second sentence of section 4019, subdivision (h) refers to days earned by a prisoner before the October 1 date. O'Rourke argues that to give meaning to this second sentence, the statute must be interpreted as providing that days earned by a prisoner after October 1, 2011 must be calculated at the rate established by the new law, even if the crime was committed before the October 1 date.

Several courts have rejected the identical argument. (See, e.g., *Rajanayagam*, *supra*, 211 Cal.App.4th 42; *People v. Ellis* (2012) 207 Cal.App.4th 1546.) The *Rajanayagam* court explained, "[S]ubdivision (h)'s first sentence reflects the Legislature intended the enhanced conduct credit provision to apply only to those defendants who

19

committed their crimes on or after October 1, 2011. Subdivision (h)'s second sentence does not extend the enhanced conduct credit provision to any other group, namely those defendants who committed offenses before October 1, 2011, but are in local custody on or after October 1, 2011. Instead, subdivision (h)'s second sentence attempts to clarify that those defendants who committed an offense before October 1, 2011, are to earn credit under the prior law. However inartful the language of subdivision (h), we read the second sentence as reaffirming that defendants who committed their crimes before October 1, 2011, still have the opportunity to earn conduct credits, just under prior law." (*Rajanayagam*, at p. 52.) We agree with the court's reasoning and legislative analysis in *Rajanayagam*. (*Ibid.*)

This interpretation and its application to O'Rourke does not deprive him of equal protection of the law because, assuming he is similarly situated to inmates who committed their offenses after the effective date of amended section 4019, the Legislature nonetheless had a rational basis for treating the latter inmates differently. Amended section 4019 was part of larger legislation whose purpose was to " 'to reduce recidivism and improve public safety, while at the same time reducing corrections and related criminal justice spending.' " (*Rajanayagam*, *supra*, 211 Cal.App.4th at p. 55.) "[I]n choosing October 1, 2011, as the effective date of [amended section 4019], the Legislature took a measured approach and balanced the goal of cost savings against public safety. The effective date was a legislative determination that its stated goal of reducing corrections costs was best served by granting enhanced conduct credits to those defendants who committed their offenses on or after October 1, 2011. To be sure,

20

awarding enhanced conduct credits to everyone in local confinement would have certainly resulted in greater cost savings than awarding enhanced conduct credits to only those defendants who commit an offense on or after the amendment's effective date. But that is not the approach the Legislature chose in balancing public safety against cost savings. [Citation.] Under the very deferential rational relationship test, we will not second-guess the Legislature and conclude its stated purpose is better served by increasing the group of defendants who are entitled to enhanced conduct credits when the Legislature has determined the fiscal crisis is best ameliorated by awarding enhanced conduct credit to only those defendants who committed their offenses on or after October 1, 2011." (*Rajanayagam*, at pp. 55-56.)

Lastly, we agree with the Attorney General that O'Rourke wrongly received one extra conduct credit. "Under [former] section 4019, a defendant receives two days of conduct credit for each four-day block of time served. 'The proper method of calculating presentence custody credits is to divide by four the number of actual presentence days in custody, discounting any remainder. That whole-number quotient is then multiplied by two to arrive at the number of good/work credits. Those credits are then added to the number of actual presentence days spent in custody, to arrive at the total number of presentence custody credits. [Citations.]' [Citation.]" (*People v. Kimbell* (2008) 168 Cal.App.4th 904, 908-909.)

In this case, O'Rourke served 302 actual days in presentence custody. Using the proper calculation, O'Rourke was entitled to 150 conduct credits rather than the 151 awarded by the trial court. Accordingly, the abstract of judgment must be amended to

21

reflect the proper presentence custody credits of 452 days (302 actual custody days and 150 conduct credits).

                                    DISPOSITION

The judgment is modified to reflect an award of 452 days of presentence custody credit, comprised of 302 actual custody days and 150 days of conduct credit.  The trial court is directed to prepare an amended abstract of judgment and forward a copy to the Department of Corrections and Rehabilitation.  As so modified, the judgment is affirmed.


                                                        McINTYRE, J.

WE CONCUR:

NARES, Acting P. J.

McDONALD, J.


                                         22